## MARY F. STEARNS v. NATHAN H. VINCENT.

*Trover—Right of possession—Forcing an entrance—Question for court— Cross-examinations.*

In trover against a sheriff's officer for chattels seized by him on execution, defendant can show, for the purpose of defeating the action, that plaintiff had no right of possession in his own name.

Where the facts are unquestioned from which a rule of law is to be deduced, the judge cannot leave it to the jury to deduce the rule, but must do it himself, and give them positive instructions upon the facts.

Where distinct portions of the same building are used for a store and dwelling, the rule that an officer, in serving process, must not force the outer door of respondent's dwelling applies only to the outer door of that part of the building which is occupied by the family for domestic purposes; and if the building has a common entrance, it applies to the inside door which separates the dwelling from the rest of the interior.

A "dwelling house," when considered in relation to burglary, includes whatever is within the curtilage, if used with it for domestic purposes; and it covers all those buildings the forcible breaking of which for felonious purposes during the hours which peaceable and law abiding persons give up to rest would naturally cause alarm, distress and danger.

A householder waives his right to close the outer door against an officer serving process, by allowing him to enter; and if the officer once gains entrance through the outer door without force or fraud the privilege is gone, and he can force any other door open if necessary to make complete service of his process.

50 MICH.—14

In trover the nature of plaintiff's possession can be inquired into on cross-examination of the plaintiff.

Error to Mecosta.   (Fuller, J.)   Jan. 18.—Feb. 27.

TROVER.   Defendant brings error.   Reversed.

*Norris & Uhl* for appellant.   Proof of general property in a third person establishes his right to possession : *Rotan v. Fletcher* 15 Johns. 207; *Pemberton v. Smith* 3 Head 18 ; *Drew v. Spaulding* 45 N. H. 472; *Clapp v. Glidden* 39 Me. 448; *Esty v. Graham* 46 N. H. 169; *Smoot v. Cook* 3 W. Va. 172; *Rose v. Coble* Phil. (N. C. L.) 517; *Laspeyre v. McFarland* Taylor (N. C. L.) 620; *Grubb v. Guilford* 4 Watts 241; *Davidson v. Waldron* 31 Ill. 129; *Schermerhorn v. Van Volkenburgh* 11 Johns. 529 ; *Kennedy v. Strong* 14 Johns. 131 ; defendant in trover may produce under the general issues any evidence to show that plaintiff had no property in the goods : 3 Stark. Ev. (4th Am. ed.) 1504 ; and may disprove his title by showing that the property belongs to other persons : 3 Phil. Ev. (4th Am. ed.) 543 ; or by showing paramount title in a stranger : 3 Greenl. Ev. 648 ; *Stephenson v. Little* 10 Mich. 433 ; *Brady v. Whitney* 24 Mich. 154 ; *Redman v. Gould* 7 Blackf. 361 ; *Estey v. Smith* 45 Mich. 403 ; *Webb v. Fox* 7 Term 391 ; plaintiff's admission that the property belonged to a stranger can be shown : *Glenn v. Garrison* 17 N. J. L. 1 ; a mere servant cannot maintain trover : 1 Chit. Pl. (15th Am. ed.) 151; *Dillenback v. Jerome* 7 Cow. 294 ; *Ludden v. Leavitt* 9 Mass. 104; *Com. v. Morse* 14 Mass. 217.

*M. Brown* and *John H. Palmer* for appellee.   Naked possession of goods with claim of right is sufficient evidence of title as against one who shows no better right : 2 Greenl. Ev. (12th ed.) 567 ; *Cullen v. O'Hara* 4 Mich. 137; Cooley on Torts 445 ; a tortious taking is a conversion : *Allen v. Kinyon* 41 Mich. 284; and a subsequent demand before bringing suit is unnecessary : *Woodbury v. Long* 8 Pick. 544; *McPartland v. Read* 11 Allen 232 ; *Prescott*

*v. Wright* 6 Mass. 20 ; *Pierce v. Benjamin* 14 Pick. 356 ; *Thurston v. Blanchard* 22 Pick. 18.

Cooley, J.   The declaration in this case contains three counts.

The first count recites the recovery of a judgment in the circuit court for the county of Mecosta by the copartnership of Charles Root & Co. against the plaintiff for the sum of $3717.50 damages and $265.55 costs; the issue of an execution thereon April 17, 1878, and the delivery of the same for service to the defendant, who was then sheriff of said county ; it avers that by virtue of such execution the defendant levied upon a stock of dry goods and notions belonging to the plaintiff consisting of a great number of separate pieces, and duly advertised them for sale to satisfy the judgment ; that at the time and place appointed for sale a large number of persons attended as bidders, and it then and there became and was the duty of defendant to offer for sale and sell said stock of dry goods and notions in small parcels, but that in disregard of that duty he offered and sold the whole stock as one parcel, and the same was struck off to the plaintiff in the execution for the sum of $1500, which was greatly below the value and below what the goods would have sold for in parcels ; to plaintiff's damage, etc.

The second count recites the same judgment, execution and levy, avers that there was included in the levy goods to the value of $250 which by the law of the State were exempted from sale on execution as stock in trade for the plaintiff, and that defendant in disregard of the exemption proceeded to sell and did sell all the goods, including the amount so by law exempted.

The third count is an ordinary count in trover for the conversion of the stock of goods.

The plea of the defendant is the general issue without notice of any special defense.

On the trial the plaintiff proved by one Webster that he was the officer who made the levy, and that he made it as

under-sheriff of the defendant; that he first attached the goods under a writ of attachment against the plaintiff issued as the commencement of the suit in which the judgment was recovered; that the goods at the time of the attachment were in a brick store in Big Rapids, the second story of which was occupied by the plaintiff, living with her husband and children, as a dwelling-house; that the store was closed at the time, and he obtained access by prying the backdoor out sufficiently to enable him to insert a stick and raise with it the bar by which the door was fastened.

The plaintiff was then sworn as a witness on her own behalf, and testified to her occupying the second story of the store as a dwelling-house; that at the time of the attachment she was in possession of the lower story and of the goods which were there, and was engaged in the mercantile business, and that Webster came and took the goods away without her consent on January 15, 1878. On cross-examination she was asked in what capacity she was engaged in business at that time, and replied that she supposed she was acting in possession of her own goods. She was further asked whether she had not four days before sold out the stock of goods to one Clark. The question was objected to, and was ruled out by the court as not proper cross-examination. She was also asked other questions the purpose of which was to show that at the time of the seizure she was not owner of the goods and did not claim to be, and that her possession was that of agent for Clark; but all these questions were overruled. Subsequently the defendant attempted to prove the same facts by other witnesses, but was not allowed to do so, on the ground that defendant having wrongfully taken property from the possession of the plaintiff, he could not excuse himself by setting up title in a third party. The ruling of the court appears to have been deliberate and after full argument, and the judge assigned his reasons as follows:

"I have listened with a good deal of interest to the authorities cited, and also the arguments of counsel upon this question, because it is a question of a good deal of importance. My mind was very well fixed at the close of

the argument last evening, and since that time I have taken occasion to examine authorities, both those which have been cited by counsel, and several which have not been. The plaintiff's theory in this case is as follows, which is substantiated by proof which may be satisfactory to the jury, making a prima facie case, like this: That on the 15th day of January, 1878, the plaintiff in this suit was in possession of a certain stock of goods and claiming the possession by right of ownership; also, it is claimed that on the evening of that day—the 15th of January, 1878—this defendant, by his deputy, forcibly obtained possession of that stock of goods, by breaking open or forcing open the rear door. It is claimed by the plaintiff that this defendant went there— or we shall so assume—the same as any other individual would have gone, having no greater rights than any other individual to do what he did. Following the case in that light, we will see how the matter stands: Supposing that Mr. Webster had been armed with no process whatever, and had broken into the store, and had taken possession and maintained it, and converted the property; in order to escape liability, he must justify in some way. The theory of the plaintiff is that he cannot say when prosecuted for the offense—which it would be an offense undoubtedly— that he cannot say to the party in possession, when prosecuted for this illegal transaction: 'You have no right to that property; I had as much right to it as you had, for you had none. I don't claim to have had any right; you had none either, consequently I am not liable to you; if I am liable to any one, I am liable to somebody else.' That is the position, as I understand it, that the plaintiff really takes.

Now the theory of the defense is this: That the man who commits the wrong can say to the plaintiff: 'You had no right to the possession; you had no ownership. I had none either; but at the same time I can justify my acts and defeat your recovery by saying to you that you had no right either—neither of us had any right; and if I am to be prosecuted and recovered against, it must be by somebody else besides you.' Now the question is, which is the more reasonable, and which is sustained by the weight of authority? If the person in this case entering the premises and taking possession of the property was armed with a lawful writ of attachment, and prosecuted that writ to effect in legal manner, he has a perfect defense. I mean to say if there was a claim against this plaintiff, and that claim was afterwards reduced to judgment and an execution issued in

a legal manner, and all the proceedings were legal, then of course he has a perfect defense; but in case he should fail to do that, the question is, has he got any? He certainly has none, unless it is the fact that he can say to the plaintiff: ' You had no right, nor I either; therefore I am not to suffer for what I have done. The property in this case belonged to Mr. Clark; if he has got any grievance it is his business to show it, and not yours.' I am inclined to think that the position is entirely untenable; that no one has the right to screen himself from liability in a case of this nature by showing that the party from whom he took the property had no right there. Now to maintain an action of trover it is necessary in many cases to show the mere possession. In this case the plaintiff claims possession, and shows it by satisfactory evidence until something better appears, by right of ownership. I think in this case that the weight of authority is strongly in favor of the position taken by the plaintiff. The objection to the testimony offered will be sustained."

The defendant by his counsel then made the following offer: " The defendant offers to show that the plaintiff at the time of the seizure of the goods in controversy was a mere clerk and servant of one Alfred L. Clark, her father, who was then the sole owner, and in the actual and exclusive possession of the goods in question, and of the store containing them, and that the plaintiff had no general or special property in the goods, or possession thereof." This offer was overruled, the court remarking that " of course any proof of that nature would be shut out by the opinion of the court already given."

Defendant's counsel then made the following offer : " We offer to prove that the plaintiff was not in possession of the property in question at the time of the seizure." This also was overruled.

Defendant's counsel further offered to show that Clark had brought suit against the defendant for the value of these same goods; that one of the issues in that suit was whether the sale of the goods from this plaintiff to Clark was not void as to her creditors; and that the case had proceeded to trial and judgment. This offer was also overruled.

Before the evidence was concluded plaintiff withdrew the

second count of her declaration. The defendant then moved to strike out all evidence of a forcible entry by the officer into the store, on the ground that an unlawful entry had not been alleged in the declaration. The plaintiff thereupon announced that she would rely for a recovery upon the third count exclusively, and upon this announcement the defendant's motion was overruled. The case was submitted to the jury, who returned a verdict for the plaintiff for the full value of the goods.

To understand the grounds of the recovery it is necessary to give some portion of the instructions to the jury.

After stating the general nature of the case, and that only the count in trover now remained to be considered, the judge proceeded:

"It is claimed that the Van Loo building was occupied by this plaintiff as a dwelling-house, and testimony has been given to show that the upper story of the building was actually occupied by the plaintiff as a private dwelling. Also that the lower story, comprising the store, was partly used as a dwelling; that the rear door of that store was really the rear door of the dwelling; that in order to have communication with the back yard, that they came down from the dwelling part up-stairs down over a flight of stairs leading down there, and then out the back door; that they used that back door and the stairs as a part of the dwelling. Upon that question you will scan the testimony, and determine for yourselves whether that is a fact or otherwise. It is not for me to say to you whether it is a fact, but it is for you to find, and find it from the testimony in the case. It is claimed that the party plaintiff was in possession of the store below, and of the dwelling-house part above, and it is claimed also that the whole was a dwelling, the whole building, necessarily, from the facts that are claimed to have been shown here by the plaintiff's witnesses.

Now, it is claimed that on that night of that day in January this defendant, by his under-sheriff, Simon G. Webster, about 9:15 in the evening, came to this rear door of the store and forced it open. The testimony is before you, gentlemen, on that point, and if you give credit to the statements of the witness who is alleged to have gone into the store, it will satisfy you that force was used there to obtain an entrance into that store. Now I charge you that if there was a trespass committed in so doing, that no act performed

by that under-sheriff afterwards by virtue of any process which he might have had, could protect him. His acts after that, I say, if it was an illegal entry and trespass and breaking, would be entirely void, no matter how many attachments or executions he might have had, because if his entry was unlawful, every act afterwards was unlawful. There is nothing clearer than that principle of law in the books. I think there will be no dispute about that.

And I further charge you that if you find that this building was the dwelling-house of the plaintiff, the entire building, that the officer did commit a trespass in entering it in the way it is alleged that he did, in breaking open this door ; if he entered in that way it was an unlawful entry—it was a trespass, something that he had no right to do, no matter with what civil process he might have been armed ; because every one's dwelling-house, as has been remarked, is his castle, and sacred. No one has a right to violate it or break in upon it in order to enforce any civil process—that is, of this nature, levying of an attachment or an execution ; there are some cases where it might be done, but not in any cases of this kind. Now it is for you to find whether these facts which are given in this case bear out and authorize this conclusion."

This is a sufficient statement of the case for our purposes.

I. It has been held in some cases that one who has peaceable possession of chattels by claim of right may maintain trover against a wrong-doer who converts the chattels to his own use, and that not only is his possession evidence of title in his favor, but the wrong-doer will not be suffered to defend by showing title in a third person with whom he does not connect himself : *Duncan v. Spear* 11 Wend. 54 ; *Daniels v. Ball* 11 Wend. 57, n. ; *Harker v. Dement* 9 Gill 9, 12 ; *Magee v. Scott* 9 Cush. 148 ; *Hubbard v. Lyman* 8 Allen 520 ; *Burke v. Savage* 13 Allen 408 ; *Bartlett v. Hoyt* 29 N. H. 317 ; *Knapp v. Winchester* 11 Vt. 351 ; *Coffin v. Anderson* 4 Blackf. 395 ; *Weymouth v. Chicago etc. Ry. Co.* 17 Wis. 550 ; *Carter v. Bennett* 4 Fla. 283, 355 ; *Cook v. Patterson* 35 Ala. 102 ; *Vining v. Baker* 53 Me. 544. Lord Campbell states the rule as follows : "I conceive the law is, that if a person is peaceably and quietly in possession of a chattel as his own property, that a person who takes it from him, having no good title, is a wrong-doer, and that

such person cannot defend himself by showing that the chattel is not the property of the plaintiff, but the property of a third person. The law is laid down in the most clear and express terms in the case of *Wilbraham v. Snow* 2 Saund. 47, and the notes to that case by the very learned editor Mr. Sergeant Williams, vouching a number of authorities to show that such is the law of England; and it is most reasonable and most essential to society that it should be so. It is of the greatest importance that a man shall not, having no good title of his own to the property, be allowed to seize it, and thereby probably bring about a breach of the peace and occasion great mischief and confusion. * * * The plaintiff rests on his possession of the property; and the question is whether a person who has no title whatever of his own shall be allowed to show that the plaintiff has not the right of property. The right of property is presumed from the possession; and is that presumption to be rebutted by evidence on the part of the defendant, a mere stranger and wrong-doer, showing that the plaintiff was not the real owner of the chattel? I am of opinion that that cannot be done." *Jeffries v. Great Western Ry. Co.* 5 El. & Bl. 802; s. c. 34 E. L. & Eq. 122, 125. It was probably the doctrine of these cases that the circuit judge had in mind in his rulings on the trial of this suit.

The judge evidently misapprehended these decisions and misapplied them. No such doctrine is found in them as is embraced in the rulings made by him on the admission of evidence. The plaintiff has not in this case recovered on her possession as against a wrong-doer; but the defendant denied her possession and offered to disprove it, and was not permitted to do so. Several times and in different forms he made his proposition to show that the plaintiff had parted with both possession and title, and that such holding as she had at the time of the levy by the defendant was a holding as mere agent of her father. If there is any authority anywhere which would preclude this showing, it has not been brought to our attention. We are confident it has never been held in any reported case.

The mischief of such a doctrine could have no better illustration than such as the facts of this case would present. If Clark owns the goods in controversy, he may recover of the defendant their full value. If this plaintiff may recover upon such possession as she had, no reason appears why her husband could not recover also. Apparently it would be as easy for him to show possession as for the plaintiff; and it is not to be doubted that he might make a sufficient showing if the defendant was not suffered to cross-examine him upon the facts. Then if there was a clerk in the store, why might not he recover also? Indeed the defendant offered to show that the plaintiff was a mere clerk, but was not suffered to do so, and as it is supposable he might have made the proof if permitted, this judgment cannot be supported without holding that the possession of a clerk is sufficient title to enable him to recover the full value of the goods. And if one clerk may recover on his or her possession, why not several in succession? Surely no such doctrine can have any basis in law or reason.

If a party has peaceable possession of property under a claim of title which no other claimant is disputing there may be good reason why a stranger should not be suffered to disturb the possession without pretense of right in himself. It is not one man's business to assert claims on behalf of another who does not see fit to assert them himself, and the peace of society, as Lord Campbell shows, is best subserved by not suffering strangers to the title to put themselves forward as champions of the rights of others who make no claim, and to justify their own trespasses by showing that some one else, had he been so disposed, might have been justified in a like interference. But it was the possession itself that the defendant took issue upon in this suit, and by the very authorities upon which the plaintiff relied, the right of recovery depended upon it.

II. But the judge was equally in error in the view he took of the protection of the dwelling-house. He was mistaken in supposing that the question whether the store was or was not a part of the dwelling-house, was a question of

fact, and in submitting it as such to the jury.  If the facts were in dispute, they should have been submitted to the jury under proper instructions; but they were not in dispute.  The unquestioned facts were that the lower story of the building was occupied for a store, and the upper story for a dwelling.  The back door was common to the store and the dwelling, but it does not appear that in any other respect was there any joint occupancy.  Now upon these facts the judge should have given positive instructions, and he could not leave it to the jury to deduce rules of law from unquestioned facts.  That was his business, not theirs.

The jury appear to have reached the conclusion that in law the store was a part of the plaintiff's dwelling, and that the entry into it by force was unlawful.  Upon this they held the levy void, and the defendant responsible for the full value of the goods, notwithstanding he had process to justify his seizing them.  There are New York authorities which are thought to support this ruling.  *Quinn v. People* 71 N. Y. 561, is specially relied upon.  That was a prosecution for burglary.  The building broken into was similar in its occupation to the one occupied by the plaintiff in this case, and the store on the first story was held to be a part of the dwelling-house of the proprietors who lived over it.  But to make this case applicable we must be satisfied that the term " dwelling-house " has the same meaning in the law of burglary which it has in the law which regulates the duties of officers in making service of civil process, and we do not find that it has ever been distinctly held that such is the case.  In the law of burglary the dwelling-house is deemed to include whatever is within the curtilage, even if not inclosed with the dwelling, if used with it for domestic purposes.  *People v. Taylor* 2 Mich. 250; *Pitcher v. People* 16 Mich. 142.  This construction of the term is for the peace, repose and safety of families in the night-time, and it is made to include all those buildings, the forcible breaking of which for felonious purposes during the hours which peaceable and law-abiding persons give up to rest, would naturally cause alarm, distress and danger.  The protection

of the dwelling against entry for the service of process is in the outer door only, and it is optional with the owner to take it by closing the door against the officer, or to waive it by allowing him to enter. If the officer once gains entrance through the outer door without force or fraud, the privilege is gone, and he may force open any other door if necessary to make complete service of his process. If, therefore, the door which was forced by this officer was the outer door of the plaintiff's dwelling, the officer, if he had succeeded in entering the store while the door stood open might lawfully have forced the door to what constituted the dwelling in fact. But nothing seems plainer than that any such application of the principle deprives that which constitutes the dwelling in fact, namely, all that part of the building which is occupied by the family for domestic purposes, of any privilege at all. If the outer door of the store is to be deemed in law the outer door of the dwelling, then when that door is passed the officer for the service of his process may lawfully force his way through any inner door; and through the door which constitutes the entrance to the second story as much as any other. *Williams v. Spencer* 5 Johns. 352; *Hubbard v. Mace* 17 Johns. 127. But as the very nature of the business to which the lower story was devoted requires it to be kept open for general access of the public, and a general license is given to everybody to enter for business purposes, it is obvious that to treat the outer door of the store as the outer door of the dwelling for the purpose of domestic protection, would be to sacrifice the business to the privilege or to surrender the privilege altogether. If this were a necessity of the situation, it must be submitted to; but all the necessity there is in the case arises from giving to the dwelling a definition which makes it embrace something which in fact is no part of the dwelling at all. The moment we limit the application of the term "dwelling-house" to that which is occupied by the family for dwelling purposes, and treat the remainder as being what it is in fact, namely, a shop devoted exclusively for business purposes, all difficulty disappears, and it becomes

easy to give the householder his privilege, without depriving the officer of any right in respect to the shop which he would have if what to the business is the unimportant circumstance that the owner lived under the same roof instead of elsewhere did not exist. The officer by following a customer into the store would not then acquire the right to force his way into the dwelling, and the householder by taking up his residence over the store would not acquire the right to close his place of business against legal process—a right which others do not have and which no principle of the common law was intended to confer. The privilege is thus preserved and absurd consequences avoided. The opposite conclusion would sacrifice both the privilege and the principle to a mere definition.

In *Swain v. Mizner* 8 Gray 182, it was decided that when a building is leased in distinct portions to several tenants, the door to the occupation of each tenant is to be deemed the outer door of his dwelling-house, and that an officer, though he may be lawfully within the building, has no right to force such door for the service of process. The principle is applicable here. The outer door of the plaintiff's dwelling was the door into the part of the building occupied for domestic purposes, and it was behind that she must claim her protection, and not behind the door of the store.

It does not appear by the record to have been claimed that the officer's entry into the store was unlawful, provided the store was not within the protection of the dwelling. He offered to prove that he demanded admittance before forcing his way in.

As the attempt by the defendant to show the nature of the plaintiff's possession was first made by cross-examination of the plaintiff herself, and was excluded as not being proper cross-examination, attention is called to the repeated decisions of this Court which show beyond question that the attempted cross-examination was entirely within the limits of the party's right. *Chandler v. Allison* 10 Mich. 460 ;

*Dann v. Cudney* 13 Mich. 239 ; *Detroit & Milwaukee Railroad Co. v. Van Steinburg* 17 Mich. 99.

The judgment must be reversed with costs, and a new trial awarded.

GRAVES, C. J. and MARSTON, J. concurred.