ANTONIO DONDERO AND JOHANNA B. DONDERO v. LEWIS FRUMVELLER.

*Practice—Failure of plaintiff to make a case—Jury should be instructed to find for defendant.*

Where upon the undisputed testimony the plaintiff fails to make a case, the court should direct a verdict for the defendant.

Error to Superior Court of Detroit. (Chipman, J.) Argued April 7 and 8, 1886. Decided June 10, 1886.

Covenant. Defendant brings error. Reversed. The facts are stated in the opinion.

*Charles M. Swift*, for appellant.

*Case & Carpenter*, for plaintiffs.

CHAMPLIN, J. The defendant, on November 11, 1882, by warranty deed, conveyed to the plaintiffs " the south-westerly forty feet in width, from front to rear, of lot number 54 of section 7, according to the Governor and Judges' plan of the city of Detroit; the same being situated on the north-westerly side of Monroe avenue, between Farrar and Randolph streets."

This deed contained a covenant that the premises " are free from all incumbrances whatever," and this action is brought for a breach of this covenant.

Monroe avenue, at this point, runs in a north-easterly and south-westerly direction, and the lines of the lots fronting thereon are laid at right angles, or nearly so, to the avenue. Adjoining lot 54 on the north-easterly side is lot 1, and on the south-westerly side is lot 53. Lot 54, as laid out on the Governor and Judges' plan, has a frontage on Monroe avenue of 60 feet.

On the first day of November, 1875, Lewis Frumveller, the above-named defendant, executed a lease for fifteen years to Daniel J. Lane and wife, of " the north twenty feet of lot No. 54, on the west side of Monroe avenue." There is no dispute that this description applies to the north-easterly 20 feet of lot 54 according to the Governor and Judges' plan.

Nearly two years later, in May, 1877, Lewis Frumveller, the defendant, who was at that time the owner of lot 54, entered into an agreement with Mary Fitzpatrick, who was then the owner of lot 1, section 7, of the Governor and Judges' plan, respecting the dividing line between their respective premises, in which, for the purpose of establishing a dividing line between lots 54 and 1, they agreed upon and established a line, therein particularly described, from

an iron post in the rear to the south-easterly corner of a brick building then occupied by August Goettermann, on Monroe avenue. That this line was not the dividing line between lots 54 and 1 of section 7 according to the Governor and Judges' plan is evident from the terms of the agreement. Frumveller quitclaimed to Mrs. Fitzpatrick, her heirs and assigns, forever, all right, title, and interest which he had to any and all said premises north-easterly of said dividing line ; and she quitclaimed to him, his heirs and assigns, all right, title, and interest which she had to all said premises south-westerly of said dividing line.

These conveyances show that the parties well understood that the dividing line then agreed upon was not identical with the line according to the Governor and Judges' plan, under which they held their titles.

Lot 54 is occupied by buildings. The north-easterly 20 feet, after being leased to Lane, was assigned to August Goettermann, who erected a brick building upon the leased premises. After this building was erected defendant leased the south-westerly 40 feet of lot 54 to the plaintiff Antonio Dondero, who erected a brick building thereon, and in doing so, by consent of Goettermann, lapped over upon the wall of his building seven inches.

At the time the plaintiffs purchased, they measured the frontage between the brick building of Mr. Maier standing on lot 53 and the Goettermann building, and knew where the 40 feet came to. The actual distance between these two buildings, according to the testimony of Mr. Daly, is 39.43 feet, and according to the testimony of Mr. Robinson is 39.45 feet, both of whom were plaintiffs' witnesses, and both surveyors. The defendant introduced no testimony.

The declaration counts upon a conveyance from defendant to the plaintiffs of premises according to the Governor and Judges' plan. It does not describe what the frontage is on Monroe avenue according to that plan. The only evidence of the number of feet front contained in lot 54 according to the Governor and Judges' plan was introduced and proven by the plaintiffs' witness Eugene Robinson, who testified

that, according to that plan, lot 54 had a frontage of 60 feet on Monroe avenue.

There was no testimony introduced showing, or tending to show, that there was any shortage in the quantity of land or actual distance on the ground less than that called for by the plan. This testimony was therefore conclusive upon the plaintiffs, and the lease to Lane did not, under the plaintiffs' evidence, embrace any part of the premises sold to them. Until it was established, or testimony introduced showing either that lot 54 was not 60 feet front on Monroe avenue according to the Governor and Judges' plan, or that no distance was given on the plan, or, if given, there was an actual shortage in distance from that given, it was not admissible to show the distance between the Maier and Goettermann buildings for the purpose of proving a breach of the warranty, as it would have no tendency to prove such breach. The court, however, submitted to the jury the actual location of the buildings erected on lots 54, 53, and 1, and from that, and the testimony of the surveyors, left it to them to find the actual width of lot 54 on Monroe avenue.

We think the court erred, not only in admitting such testimony, but in submitting it to the jury as a basis of their verdict.

The court properly instructed the jury in that portion of his charge which we quote :

" The precise cause of action is this : He says that he bought the south-westerly 40 feet, from front to rear, of lot 54, according to the Governor and Judges' plan; that out of that same lot, on the north-easterly side, which is the side up towards Randolph street on Miami avenue, this lease of 20 feet had been given, which was in existence at the time the deed was made, and which is still in existence ; that it turns out that the 20 feet covered by that lease takes about 7 inches out of the 40 feet which he was to have. In order to determine this, several questions arise. In the first place, how wide is that lot ? Is it a sixty-foot lot, or is it narrower ? You are to determine that question. Of course, if lot 54 is a sixty-foot lot, 40 feet might be sold from the south-westerly side of it, and 20 feet might be sold or leased from the north-easterly side of it, without either party

encroaching on the other.   So that you are to determine that first."

As before stated, no witness testified that lot 54 according to the Governor and Judges' plan was not a sixty-foot lot, or that there was any actual shortage in width upon the ground, while one of plaintiffs' witnesses testified that it was a sixty-foot lot according to the plan. The jury should have been in- . structed that they should determine that fact in accordance with the undisputed testimony that it was a sixty-foot lot: *Gavigan v. Evans*, 45 Mich. 597; *Lange v. Perley*, 47 Id. 352; *Township of Medina v. Perkins*, 48 Id. 67; *Seligman v. Ten Eyck's Estate*, 49 Id. 104; *Stearns v. Vincent*, 50 Id. 209; *Toledo & A. A. R. R. Co. v. Johnson*, 55 Id. 456.

The defendant's counsel requested the court to charge the jury that the agreement made between the defendant and Mrs. Fitzpatrick does not constitute any evidence of the location of the true line between lot 54 and lot 1 according to the Governor and Judges' plan. We think he was entitled to this instruction, for the reason that these parties did not agree upon the line as identical with that upon the plan, but established it, independent of such plan, for their mutual convenience; and we think it was error for the judge to instruct the jury as follows:

"There has been testimony as to these lines,—as to the dimensions; also as to the line which was agreed upon between the parties.   You have heard that agreement read, and it is for you to determine whether, by the terms of it, Mr. Frumveller had admitted that the line which was established by the iron post, etc., was the original line of the Governor and Judges' plan.   All these things will come up in order to determine where the shortage, if there is one, arose."

Under the undisputed testimony the plaintiffs made out no case, and the court should have directed a verdict for the defendant:   *Vinton v. Schwab*, 32 Vt. 612; *Boland v. Missouri R. Co.*, 36 Mo. 484; *Singleton v. Pacific R. R.*, 41 Mo. 469; *Hiatt v. Brooks*, 22 N. W. Rep. 73.

The judgment must be reversed, and a new trial had.

The other Justices concurred.