DOUGLAS *v.* EDGEWATER PARK COMPANY.

1. STATUTES—PURPOSE OF FIRE PREVENTION ACT.

The basic purpose of the fire prevention act is to provide for the prevention of fires and the protection of persons and property from exposure to dangers of fire or explosion (CL 1948, § 29.3).

2. NEGLIGENCE—VIOLATION OF STATUTE.

Violation of a duty imposed by statute is negligence *per se.*

3. SAME—VIOLATION OF ADMINISTRATIVE RULE.

Violation of a duty imposed by an administrative rule or regulation is evidence of negligence.

4. DEATH—FIRES—COMPLIANCE WITH ADMINISTRATIVE RULE—QUESTION FOR JURY.

Whether or not the fibre board or soundproofing used in defendant's ballroom was prohibited by an administrative regulation of the commissioner of the State police, promulgated by him under the fire prevention act, was a question of fact for determination by jury in action under death act for loss of member of dance band playing when fire broke out (CL 1948, §§ 29.3, 691.581 *et seq.;* 1954 AC, §§ R 28.101, 28.109, 28.110).

5. SAME—FIRE PREVENTION ACT—APPLICATION OF ADMINISTRATIVE RULE TO EXISTING BUILDING.

The applicability of rules and regulations promulgated by the commissioner of the State police under the fire prevention act to building erected prior to adoption of the act or the rules is a matter of law for determination by the court in an action

REFERENCES FOR POINTS IN HEADNOTES

[1, 7] 22 Am Jur, Fires § 4.
[2] 38 Am Jur, Negligence §§ 158–169.
[3] 38 Am Jur, Negligence § 170.
[4] 53 Am Jur, Trial § 156 *et seq.*
    9 Am Jur, Buildings §§ 17–27.
[6] 50 Am Jur, Statutes § 488 *et seq.*
[8] 9 Am Jur, Buildings §§ 17–27.
[9, 10] 9 Am Jur, Buildings §§ 17–27.
    53 Am Jur, Trial §§ 512–523.
[11, 12] 53 Am Jur, Trial § 508 *et seq.*

under the death act (CL 1948, §§ 29.3, 691.581 *et seq.*; 1954 AC, §§ R 28.101, 28.109, 28.110).

6. STATUTES—RULES AND REGULATIONS—COMPLIANCE—REASONABLE TIME.

A reasonable time for compliance with provisions of a statute and rules promulgated pursuant thereto, affecting situations in existence when the statute and rules become effective, must be allowed, where the statute does not specify the time for compliance.

7. SAME—FIRE PREVENTION ACT—COMMISSIONER OF STATE POLICE.

The fire prevention act was intended to give the commissioner of the State police the authority to effectuate without unnecessary delay the prevention and abatement of fire hazards detrimental to life and property (CL 1948, § 29.3).

8. SAME—FIRE PREVENTION ACT—COMPLIANCE BY BUILDING OWNER—REASONABLE TIME.

The lapse of over 11 years after adoption of fire prevention act and promulgation of rules and regulations thereunder by the commissioner of the State police cannot be said to be an unreasonable time for compliance by owner of ballroom which had been erected some 14 years before adoption of the statute (CL 1948, § 29.3).

9. DEATH—INSTRUCTIONS—COMPLIANCE WITH FIRE PREVENTION ACT —REASONABLE TIME—APPLICATION OF RULES.

Jury in action under death act, brought against owner of ballroom who had not complied with provisions of rules and regulations of the commissioner of the State police that had been promulgated under the fire prevention act, should have been instructed, pursuant to requests, that the rules and regulations were applicable, since there had elapsed over 11 years within which to comply after the rules had been made effective (CL 1948, §§ 29.3, 691.581 *et seq.*; 1954 AC, §§ R 28-.101, 28.109, 28.110).

10. SAME — REQUEST TO CHARGE — FIRE DRILLS — UNDISPUTED EVIDENCE.

Plaintiff in action under death act which arose out of fire that destroyed defendant's ballroom while plaintiff's decedent was a member of a dance band playing an engagement therein was entitled to requested instruction that defendant had violated rule of the commissioner of the State police in that defendant's employees had not conducted fire drills as required by the rule, where it is not disputed that fire drills had not been conducted (CL 1948, §§ 29.3, 691.581 *et seq.*; 1954 AC, § R 28.110).

11. Trial—Undisputed Testimony—Instructions.

A fact may, and generally should, be assumed as proved, when evidence on both sides tends to prove it and the jury should be directed to find a fact in accordance with the undisputed testimony, where the fact is one upon which a controlling rule of law is made to apply.

12. Same—Instructions—Request to Charge.

It is the duty of the trial court to present to the jury the substantial issues in the cause and to state to the jury the principles of law governing the rights of the parties, whether any specific instructions are requested by counsel or not.

Appeal from Wayne; Wise (John M.), J. Submitted January 9, 1962. (Calendar No. 50, Docket No. 48,775.) Decided February 7, 1963. Rehearing denied April 5, 1963.

Case by Kinga Douglas, administratrix of the estate of Bruno Jaworski, against Edgewater Park Company, a Michigan corporation, and against Cyril Wagner and others, copartners doing business as Edgewater Park Ballroom, under the death act for damages sustained when Jaworski was killed in conflagration. Verdict and judgment for defendant. Plaintiff appeals. Reversed and remanded for new trial.

*Charfoos & Charfoos* (*Samuel Charfoos,* of counsel), for plaintiff.

*Vandeveer, Haggerty, Doelle, Garzia, Tonkin & Kerr* (*Edward P. Echlin,* of counsel), for defendants.

Otis M. Smith, J. Plaintiff brought suit to recover for the alleged wrongful death[1] of Bruno Jaworski who died in a fire which swept the Edgewater Park ballroom at Seven Mile and Lahser roads in Wayne county on the night of October 3, 1954. Jaworski

[1] See CL 1948, § 691.581 *et seq.* (Stat Ann 1959 Cum Supp § 27.711 *et seq.*).—Reporter.

was a member of a dance band playing an engagement at the ballroom on the night in question. His body was found in the ruins the next day. Plaintiff claimed numerous acts of negligence on the part of the building owners. The jury returned a verdict of not guilty, or no cause of action. From an order denying a motion for new trial this appeal is taken.

In order to make a proper disposition of this case it is necessary only to discuss question No. 3 in appellant's statement of questions involved. Her attorney phrases it this way: "Were the statutory violations by the defendants indisputably proven?" More properly, the question should be phrased, were the questions raised by the plaintiff's claim of statutory violations fairly and accurately submitted to the jury in view of the pleadings, proofs and requests to charge? This begs the question of whether or not the law was properly construed and followed.

Plaintiff's declaration filed on November 13, 1957, alleged that the defendants committed 1 or more acts of negligence in connection with the operation and maintenance of the building. The breaches of duty complained of by the plaintiff were numerous, including violations of statutes, ordinances, and the common law. Paragraph 8, subparagraph (i), alleges the statutory violations, generally, and reads as follows:

"8. That at said time and place and prior thereto, the defendants and each of them, and by their agents and servants, committed 1 or more of the following acts of negligence:  *  *  *
"(i) In negligently violating the statutes of the State of Michigan in such case made and provided, which statutes were specifically enacted for proper protection in the instance of fire and lightning damage in such buildings as the instant one, wherein the public in great numbers were openly invited for financial gain to the said ballroom."

Defendants denied the allegations and claimed, among other things, contributory negligence on the part of plaintiff's deceased. The statute relied upon, primarily, at the trial was PA 1941, No 207, § 3 (CL 1948, § 29.3 [Stat Ann 1961 Rev § 4.559(3)]). This is part of what is known as the "fire prevention act". The basic purpose of the act as stated in the title is to provide for the prevention of fires and the protection of persons and property from exposure to dangers of fire or explosion, et cetera. Section 3 empowers the commissioner of the Michigan State police to adopt and promulgate reasonable and standard rules and regulations for the effective administration of the act, and to accomplish its intent and purposes. At the trial in March, 1960, plaintiff introduced as exhibit 6 certain regulations issued by the commissioner of the Michigan State police pursuant to said statute. Michigan Administrative Code, 1954, § R 28.101 *et seq.* Those sections of the rules with which we are chiefly concerned are printed herewith in the margin.[2]

---

[2]    "Regulations to Govern Places of Public Assemblage
                "Effective April 1, 1943
                        * * *

"R 28.101.  Rule 1. Scope of rules.
   "(a) To whom applicable: These rules shall apply to the construction or remodeling of buildings for public assembly; to school auditoriums and any other room in a school where an assemblage of people may gather; and to new and existing buildings where an assemblage of more than 50 people may congregate. (Section 9 shall apply regardless of the number of persons that may congregate.)
* * *

"R 28.109.  Rule 9.
   "It shall be unlawful to use in any building described herein, used or intended to be used for the purposes of assembly, amusement or instruction, or any building or portion of a building defined as a place of assembly, flimsy decorations of any type such as: paper, paper streamers, cloth, artificial plants, trees, flowers, vines, leaves, moss, shrubs, grass, cotton batten *or any other material or a combination of such materials, for decorative purposes or for the covering of ceilings, walls, windows or doors, or for sound-proofing,* accoustical, insulating, artistic enhancement or any other similar purpose, that will produce a quick or fast burning fire, regardless of whether it is flameproofed or not.  * * *

"R 28.110.  Rule 10.  Fire appliances.

From a thorough review of the original record it is evident that plaintiff placed great reliance upon the alleged violations of duties imposed by the rules. The record is studded with testimony and colloquy about the rules. It is not unexpected, then, that appellant should now claim serious error in the way this issue was submitted to the jury. First it is desirable to review plaintiff's requests to charge as they pertain to such violations:

"First, plaintiff alleges that the defendant violated a number of ordinances and statutes.

"12. I charge you that if you find the defendant violated a Michigan statute, that the violation of such statute is 'negligence *per se*.' *Holmes* v. *Merson*, 285 Mich 136.

"13. I further instruct you that 'a failure to observe the mandates of a statute *designed to guard against injuries to person and property constitutes negligence per se;* and if you find from a preponderance of the evidence in this case that the defendant was guilty of such failure and that, as a proximate result thereof, plaintiff's decedent was killed as alleged, no further showing of negligence is necessary to warrant a recovery by plaintiff.' 14 Am Jur Pleading and Practice Forms, p 644.

---

"The commissioner, or any of his assistants, or the local fire chief, shall survey, or cause to be surveyed, each place of assembly and shall designate suitable fire appliances in and near boiler rooms, kitchens, storage rooms and other occupied areas where such appliances are deemed necessary. Such fire appliances may consist of automatic fire alarm systems, automatic sprinkler, standpipe and hose or portable extinguishers. All fire appliances shall be kept in working condition, and all extinguishers and hose and similar appliances shall be visible and handy at all times.

"It shall be the duty of the owner or operator of each place of public assembly to provide and properly train sufficient regular employees in the use of fire appliances, so that such appliances can be quickly put into operation. It shall be the duty of the owner or operator of each place of public assembly to institute and maintain, *under the direction of the commissioner or the fire chief, monthly fire drills* so that each employee shall be trained to do a certain portion of the work of preventing or extinguishing fire and providing for the safety of human life. Drill work shall include inspections of the stage, vents, exit doors, other means of egress, and all fire devices or appliances." (Emphasis supplied.)

"14. I further charge you that the rules promulgated by the Michigan State police, fire marshal division, found in the pamphlet, exhibit 6, were in effect and binding upon the defendant at the time of plaintiff's death. My reasons for saying this to you are: (1) That in Rule No 1, section a, *To Whom Applicable,* the rule clearly states: 'These rules shall apply to the construction or remodeling of buildings for public assembly; to school auditoriums and any other room in a school where assemblage of people may gather; and to new and *existing buildings* where an assemblage of more than 50 people may congregate.' (2) Defendant cannot claim that he did not own the building when these rules were passed as a defense, inasmuch as the law of this State clearly subjects them to liability for any negligent defects or statutory defects found in the building while it was under his control and ownership. (3) These rules have been promulgated for the safety and protection of human life. They are binding upon all to whom they are directed, and in this case they are directed to existing buildings 'where an assemblage of more than 50 people may congregate.'

"15. I further charge you that inasmuch as the manager of the defendant admitted in open court without equivocation that the management and the owners of Edgewater Park violated the second paragraph of Rule No 10, to wit: 'It shall be the duty of the owner or operator of each place of public assembly, to provide and properly train sufficient regular employees in the use of fire appliances, so that such appliances can be quickly put into operation. It shall be the duty of the owner or operator of such place of public assembly to institute and maintain, under the direction of the commissioner or the fire chief, monthly fire drills so that each employee shall be trained to do a certain portion of the work of preventing or extinguishing fire and *providing for the safety of human life.* Drill work shall include inspections of the stage, vents, exit doors, other means of egress, and all fire devices or appliances.'

Such admission proves negligence *per se* and no further showing of negligence is necessary to warrant a recovery by the plaintiff if you, the jury, find that the violation of this rule was a proximate cause of the death of the deceased. In other words if you believe from the facts that Mr. Mangan failed to take proper control and efforts in evacuating the building in the time he had, and this statutory requirement of schooling and training was a reason for this, then you must find negligence on the part of the defendants."

It is plain from plaintiff's request to charge, just quoted, it is assumed that the rules of the commissioner are incorporated by reference into the statute, so as to make a violation of the rules a violation of the statute and, hence, negligence *per se*. Appellees did not challenge this interpretation. Apparently the trial judge made the same assumption as may be seen from his charge to the jury on this point:

"First, plaintiff alleges that the defendant violated a number of ordinances and statutes.

"I charge you that if you find the defendants violated a Michigan statute, that the violation of such statute is negligence *per se,* which is negligence in and of itself.

"I further charge you that the second paragraph of Rule No 10, was to-wit: 'It shall be the duty of the owner or operator of each place of public assembly to provide and properly train sufficient regular employees in the use of the fire appliances, so that such appliances can be quickly put into operation. It shall be the duty of the owner or operator of such place of public assembly to institute and maintain, under the direction of the commissioner or the fire chief, monthly fire drills so that each employee will be trained to do a certain portion of the work of preventing or extinguishing fire and providing for the safety of human life. Drill work shall include

inspections of the stage, vents, exit doors, other means of egress, and all fire devices or appliances.' "

There can be no question but that under existing opinions of this Court, the violation of a statute is negligence *per se.* However, no authority is cited for the proposition that the violation of a duty imposed by administrative rules and regulations issued under statutory authority is negligence *per se;* nor have we been able to find any such precedents in Michigan. In the absence of specific language in the statute incorporating by reference other materials there is simply no such authority. We hold further that violations of duties imposed by such rules and regulations are evidence of negligence. The rigidity of the negligence *per se* doctrine should not be extended to administrative rules and regulations.[3] It was argued strenuously below by appellee, but somewhat more faintly in this forum, that because the rules and regulations were adopted after the ballroom was built they were not applicable to the defendants. Unquestionably it was and is a question of fact for the jury as to whether or not the fibre board or soundproofing used in the ballroom was prohibited by Rule No 9, assuming applicability of the rule to the structure and its owners. Although the question of applicability is presented somewhat obliquely in this Court, it is necessary to decide, as a matter of law, whether such rules are applicable.

It seems undisputed that the ballroom was built in 1927. It is quite clear that the fire prevention act was passed in 1941, and that the rules and regulations were promulgated in 1943. Plaintiff quoted Rule No 1 in his request to charge. Rule No 1 attempts to make clear that it was applicable to then-

---

3 See 2 Harper and James, Law of Torts, §§ 17.5, 17.6, and footnotes thereunder.

existing buildings. More properly the authority should come from the statute itself. While the statute does not specify the time for a compliance, it is plain from a review of its various provisions that it was intended to give the commissioner of Michigan State police the authority to effectuate without unnecessary delay the prevention and abatement of fire hazards detrimental to life and property. For one thing, the act was given immediate effect by the legislature. Suffice it to say that between the effective date of the statute and of the rules and regulations and on the other hand the occurrence of the fire, the time for compliance cannot be said to be unreasonable. It should have been made clear in the instructions to the jury that the rules and regulations were applicable to the ballroom, leaving for the jury's determination, based upon the testimony of the various witnesses, whether or not the materials used in the ballroom came within the prohibition of Rule No 9.

On March 17, 1960, during the course of the trial, the manager of the ballroom answered to certain questions on cross-examination as follows:

"*Q.* Mr. Mangan, have you had any meetings with your employees prior to the fire, as to methods of handling any emergencies, or did you rely upon your judgment and experience, primarily?

"*A.* No meetings.

"*Q.* None at all?

"*A.* No.

"*Q.* Did you arrange with the fire marshal or the fire department to have instructions as to methods of handling fire emergencies and how to save lives?

"*A.* No.

"*Q.* Are you familiar with the Michigan fire regulations?

"*A.* Technically, no."

After further colloquy between court and counsel about the rule, the manager answered again that there was "No such meeting."

It is not denied that this testimony on the part of defendants' manager constituted a breach of Rule No 10. Plaintiff was entitled to an instruction that Rule No 10 had been violated. It was reversible error for the trial judge to instruct the jury, in effect, that their prerogative to determine whether or not the rule had been violated, when the testimony was not in dispute. We said in *Holbert* v. *Staniak,* 359 Mich 283, 290:

"It is an old established rule of law that where the facts are unquestioned from which a rule of law is to be deduced, the judge cannot leave it to the jury to deduce the rule, but must do it himself, and give them positive instructions upon the facts. *Stearns* v. *Vincent,* 50 Mich 209 (45 Am Rep 37).

"Where the testimony as to a fact is not disputed, the jury should be instructed to find it accordingly. *Dondera* v. *Frumveller,* 61 Mich 440.

"Where all of the evidence on both sides tends clearly to prove a fact, such fact may, and generally should, be assumed as proved; and in such case a charge to the jury indicating that it is competent for them to find either way is error. *Druse* v. *Wheeler,* 26 Mich 189."

In view of this and many other cases presenting issues on jury instructions, we hark back to *Barton* v. *Gray,* 57 Mich 622, 631:

"Undoubtedly it is the duty of the court to present to the jury the substantial issues in the cause, and to state to them the principles of law governing the rights of the parties, whether any specific instructions are requested by counsel or not."

See *Martiniano* v. *Booth,* 359 Mich 680, and cases cited thereunder.

Reversed and remanded for new trial, with costs to appellant.

Carr, C. J., and Dethmers and Kelly, JJ., concurred with Otis M. Smith, J.

Black, J. (*concurring in reversal*). We face again, this time without positive Michigan precedent pointing either way, forked trails of divergent legal travel. Once a court of last resort, standing thus before ways to left and right, conducts as it must an election between the 2, that court is committed to continue the way of choice regardless of unseen turns, grades and washouts that may lie ahead. It is committed because, appellate judges being both human and prideful, not one likes ever to admit he has erred. Further, once committed, the judge usually—as he may—dons the protective and altogether comfortable robe of *stare decisis*.

Today's choice, then, should be made with deliberate care. Reliance upon available and dependable precedent is in order; not casual reference to the this-or-that conclusions of textwriters. As and for such precedent I tender the following rule, taken from *New Amsterdam Casualty Co.* v. *Novick Transfer Co.* (CCA 4), 274 F2d 916, 919, noting that in each cited instance the court was speaking of safety regulations adopted in pursuance of express statutory authority:

"These regulations have been in effect since June 1, 1952, and must be complied with by all motor carriers (49 CFR 193.1). Having been made in pursuance of constitutional statutory authority, they have the same force as though prescribed in terms by the statute. *Atchison, T. & S. F. R. Co.* v. *Scarlett* (1937), 300 US 471, 474 (57 S Ct 541, 81 L ed 748); *Interstate Motor Lines, Inc.,* v. *Great Western R. Co.* (1947) (CCA 10), 161 F2d 968."

For application of this rule to a regulation of the secretary of the department of health, education and welfare, designating a certain drug as "habit forming," see *Archambault* v. *United States* (CCA 10), 224 F2d 925, 928. And, for an earlier statement of the rule, see *Maryland Casualty Co.* v. *United States,* 251 US 342, 349 (40 S Ct 155, 64 L ed 297):

"It is settled by many recent decisions of this court that a regulation by a department of government, addressed to and reasonably adapted to the enforcement of an act of congress, the administration of which is confided to such department, has the force and effect of law if it be not in conflict with express statutory provision. *United States* v. *Grimaud,* 220 US 506 (31 S Ct 480, 55 L ed 563); *United States* v. *Birdsall,* 233 US 223, 231 (34 S Ct 512, 58 L ed 930); *United States* v. *Smull,* 236 US 405, 409, 411 (35 S Ct 349, 59 L ed 641); *United States* v. *Morehead,* 243 US 607 (37 S Ct 458, 61 L ed 926). The law is not different with respect to the rules and regulations of a department of a State government."

The commissioner's rules and regulations quoted in Justice OTIS M. SMITH's opinion were designed, upon legislative authority, to protect from the dangers of fire persons gathered or having duty in places of public assembly. Violation either of the statute itself or the "rules and regulations of the commissioner lawfully issued thereunder" is made penal by express wording (CL 1948, § 29.22 [Stat Ann 1961 Rev § 4.559(22)]). Such rules and regulations are of State-wide, distinguished from local, effect. Their preventive purpose is public safety. Strict enforcement thereof by the courts as well as by the commissioner and his appointees (see section 2; CL 1948, § 29.2 [Stat Ann 1961 Rev § 4.559(2)]) will surely tend to reduce fire hazards in places "where an assemblage of more than 50 people may congregate."

We should in these circumstances extend to Rule Nos 9 and 10 the force and effect of law and, having done so, attend their treatment as law in all of our courts.

Violation by Edgewater of Rule No 10 having been concededly established, plaintiff was entitled to grant of her request to charge No 15, either in the language of that request or in equivalent phrasing. Edgewater on account of such conceded violation was guilty of negligence *per se,* leaving only for jury consideration the liability issues of causal connection (between violation and death) and contributory negligence.

For the reason given above, that of the refusal by the trial judge to grant the wording or the likeness of plaintiff's request No 15, I concur in reversal.

KAVANAGH, J., concurred with BLACK, J.

SOURIS, J., did not sit.

O'HARA, J., took no part in the decision of this case.