PRICE v MANISTIQUE AREA PUBLIC SCHOOLS

1. NEGLIGENCE—SCHOOL BUS—REGULATIONS—NEGLIGENCE PER SE—
   INSTRUCTIONS TO JURY.

   A school bus driver's violation of two provisions of a pupil
   transportation handbook published by the state board of educa-
   tion did not render the driver and his school district employer
   negligent as a matter of law in an action for damages for
   wrongful death of a pupil-passenger because, while violation of
   a statute is negligence per se, violations of duties imposed by
   such rules and regulations are evidence of negligence; there-
   fore, instructions to the jury that the bus driver had the duty
   to use ordinary care for the safety of plaintiff's decedent and
   that the provisions of the handbook could be considered with
   all the other evidence in deciding whether the driver was
   negligent were proper.

2. NEGLIGENCE—SCHOOL BUS—JURY QUESTION.

   Reasonable men could differ on the question of whether a school
   bus driver was negligent in leaving a six-year-old passenger at
   the edge of a highway accompanied by his ten-year-old brother
   and two playmates knowing that the child would have to cross
   the highway to reach his destination; therefore, the question of
   negligence was properly left for the jury's determination in an
   action against the bus driver and his school district employer
   for damages for the child's wrongful death.

3. NEGLIGENCE—PROXIMATE CAUSE—JURY QUESTION.

   The question of whether one's act or breach of duty is a proxi-
   mate cause of a plaintiff's injury is for a jury to determine.

4. NEGLIGENCE—INTERVENING CAUSE.

   An intervening cause will not sever whatever connection there
   may be between a plaintiff's injuries and a defendant's negli-
   gence if that intervening event was reasonably foreseeable.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 57 Am Jur 2d, Negligence §§ 9, 136, 137.
[4, 5] 57 Am Jur 2d, Negligence §§ 153, 199–205, 212, 219.

5. Negligence—School Bus—Foreseeability—Directed Verdict.

  Reasonable men could differ on the question of whether a defendant school bus driver could have reasonably foreseen that a passenger of his bus would be struck by another vehicle after leaving the bus; therefore, upon viewing the evidence in a light most favorable to the defendant driver and his school district employer, it was not error for the trial court to deny the plaintiff's motion for a directed verdict in an action for wrongful death.

Appeal from Schoolcraft, William F. Hood, J. Submitted Division 3 May 10, 1974, at Grand Rapids. (Docket No. 17232.) Decided June 25, 1974. Leave to appeal denied, 393 Mich —.

Complaint by Richard W. Price, Sr., administrator of the estate of Richard W. Price, Jr., against the Manistique Area Public Schools and Edwin H. Johnson for damages for wrongful death. Judgment for defendants. Plaintiff appeals. Affirmed.

*Nino E. Green,* for plaintiff.

*Hansley, Neiman, Peterson & Beauchamp,* for defendants.

Before: Allen, P. J., and J. H. Gillis and Quinn, JJ.

Allen, J. Plaintiff brought action for wrongful death, MCLA 600.2922; MSA 27A.2922, arising when plaintiff's six-year-old son was struck by a vehicle driven by Frank Carpenter. Originally a party to this suit, Carpenter died before trial, and his wife, who as administratrix of his estate had been substituted as a party, successfully obtained an accelerated judgment on the grounds that she was served with process when she was no longer administratrix of the estate and that plaintiff's claim was filed more than three months after her husband's estate had been closed. MCLA 701.19;

MSA 27.3178(19), MCLA 704.56; MSA 27.3178(307) and GCR 1963, 116.1(1) and (5). The jury rendered its verdict in favor of defendants, and plaintiff has appealed.

The fatality occurred July 31, 1968, when plaintiff's decedent was crossing US-2, a highway located in Mueller Township in Schoolcraft County. Prior to the accident, Richard, Jr., a participant in the Doyle School Head Start program, was returning home in a Manistique school bus driven by defendant Edwin H. Johnson. Upon stopping at the Price residence, Johnson was advised by Gordon Letson, Richard, Jr.'s, ten-year-old half-brother and a fellow passenger on the bus, that the two boys were to be taken to their grandmother's home.

Decedent, his older brother, and Jay and Douglas Tuttle were the last children aboard defendant's bus to be taken to their homes. Decedent's grandmother lived across US-2 from the Tuttle residence. When Johnson reached the Tuttle home, he pulled the bus onto the shoulder to let the children off the bus. Gordon told Johnson that he was going to his grandmother's mailbox, located some 90 feet in front of the bus on the Tuttle side of US-2. Johnson told Gordon to stand near the Tuttle driveway and wait until traffic cleared to cross the road. Johnson advised Gordon not to go to the mailbox.

Johnson then resumed his travel down US-2. He testified that as the bus proceeded down the road, he watched the children through his rear view mirrors, and said that the children remained standing near the Tuttle driveway.

Gordon Letson then proceeded to his grandmother's mailbox, leaving his six-year-old half-brother standing near the Tuttle's mailbox. As he ap-

proached his grandmother's mailbox, Gordon heard a "thud", and turned and saw his half-brother "flying across the road".

A major issue presented at trial was the length of time between the departure of the children from the school bus and the accident. Gordon testified that he was able to see the school bus when it was approximately one-half mile from the Tuttle residence at the time of the accident. Mrs. Tuttle testified that the children were usually brought home at 11:45 a.m. and that the bus was on time on the day in question. She testified that the accident occurred five to ten minutes after the bus had delivered the children, but later stated that the accident occurred "just a few minutes" thereafter. However, Mrs. Tuttle testified that she had called the police immediately after the accident. According to the testimony of a state police trooper, the police received a telephone report of the accident at 1:04 p.m., approximately 1-1/4 hours after the bus's "usual" arrival time. Alice Fitzpatrick, a cook at the Doyle School, traveling in a vehicle in the direction toward the Tuttle residence on US-2, said that she saw the school bus approximately three-quarters of a mile from the Tuttle residence. When she passed that residence, there was no sign of an accident.

At the close of proofs, plaintiff moved for a directed verdict on the issue of defendants' liability. The trial court denied the motion for a directed verdict, stating that the question of defendants' liability was one of fact for the jury. The jury then returned a verdict of no cause of action against plaintiff.

The State Board of Education has the "powers and duties" to regulate "school bus transportation". MCLA 388.1010(c); MSA 15.1023(10)(c). It

may "prescribe rules and regulations" to implement its powers and duties. The Michigan Pupil Transportation Handbook Bulletin No. 431, published August, 1965, contained the following two provisions which plaintiff argues established a duty for school bus drivers:

"4. To supervise the activities of children leaving the bus until they have crossed the highway in safety or are otherwise not subject to hazards.
"5. To have children pass in front of bus when leaving bus and crossing highway."

It is plaintiff's contention that defendant violated those provisions, and that such violation rendered defendant negligent as a matter of law.

While violation of a statute is "negligence *per se*", it has been held that "violations of duties imposed by such rules and regulations are evidence of negligence". *Douglas v Edgewater Park Co,* 369 Mich 320, 328; 119 NW2d 567 (1963). *Douglas* said "[t]he rigidity of the negligence *per se* doctrine should not be extended to administrative rules and regulations". 369 Mich 320, 328. In the instant case, the trial court instructed the jury that defendant had the duty "to use ordinary care for the safety of plaintiff's decedent" and further instructed the jury that the provisions of the above handbook could "be considered * * * together with all the other evidence in deciding whether defendant was negligent". The trial court was correct, and we are unpersuaded by plaintiff's argument that defendant was negligent as a matter of law. We also note that no objection was made to the trial court's instructions, and in such a situation the issue is usually held to have not been preserved for appellate review. *Hunt v Deming,* 375

Mich 581, 584–585; 134 NW2d 662 (1965). GCR 1963, 516.2.

Plaintiff also argues that under the common law defendant bus driver was negligent in leaving plaintiff's six-year-old decedent at the edge of US-2 accompanied only by his ten-year-old half-brother and two playmates, knowing that the child would have to cross the highway to reach his destination. In view of the evidence presented in this case, we find that reasonable men could differ on the question of whether or not defendant was indeed negligent as alleged by plaintiff. Accordingly, the question was properly one left for the jury's determination. See *Davis v Thornton,* 384 Mich 138, 142–146; 180 NW2d 11 (1970).

Assuming, *arguendo,* that defendant owed a legal duty to plaintiff's decedent, and that defendant breached that duty, plaintiff still had to prove that defendant's breach was a proximate cause of plaintiff's damages. Generally, the question of whether one's act or breach of a duty is a proximate cause is a question for the jury to determine. *Davis v Thornton, supra.* Defendants argue that even if they were negligent, an intervening event occurred which could not have been foreseen by defendant bus driver as a matter of law. Thus, we must determine whether the intervening cause, the striking of plaintiff's decedent by the Carpenter vehicle, was so reasonably foreseeable by the school bus driver that a jury could not come to any other conclusion than to find the bus driver negligent. An intervening cause will not "[sever] whatever connection there may be between the plaintiff's injuries and the defendant's negligence" if that intervening event "was reasonably foreseeable". 384 Mich 138, 148. *Davis v Thornton, supra,* approvingly referred to 2 Restatement Torts, § 447,

p 1196. 384 Mich 138, 148–149. Currently found in 2 Restatement Torts 2d, § 447, p 478, the applicable principle is as follows:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

*Johnston v Harris,* 387 Mich 569, 574; 198 NW2d 409 (1972), quoting from 2 Restatement Torts 2d, § 449, p 482, noted:

"If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby."

There is no Michigan authority concerned with the application of the above-accepted principles of law to the unique factual situation presented in the instant case. We therefore look to other jurisdictions for guidance. A school board and bus driver are not relieved of liability by the intervening event when a violation of a school board regulation is found to be negligence per se.[1] A bus

---

[1] *Sammons v Ridgeway,* 293 A2d 547, 549 (Del, 1972).

driver's violation of a statute was found to give rise to absolute liability in *Van Gaasbeck v Webatuck Central School Dist No 1,* 21 NY2d 239, 242; 287 NYS2d 77, 79; 234 NE2d 243, 244 (1967).[2] However, the question of proximate cause was one for the jury. 21 NY2d 246; 287 NYS2d 82; 234 NE2d 247. Cases unencumbered with the doctrines of negligence per se or absolute liability have generally noted that the issue of causation is one for the jury.[3]

A case very similar to the instant one is *McDonald v Central School Dist No 3,* 289 NY 800; 47 NE2d 50 (1943). In *McDonald,* the board of education had apparently passed a rule, which had been "conveyed to the children and the driver",[4] that the children, after departing from a school bus, should cross the street directly in front of the bus. The infant plaintiff in that case did so, but was struck by a passing vehicle. *McDonald* affirmed the intermediate appellate court's decision that:

"the question whether the bus operator should have anticipated in exercise of reasonable care the operator of automobile which struck the child would fail to stop

[2] The statute in *Van Gaasbeck* required the bus driver to instruct the pupils to cross the road in front of the bus, and to remain on the roadway with his signals flashing until the children reached the other side of the road. 21 NY2d 244; 287 NYS2d 81; 234 NE2d 246. Despite the provisions of the above statute, *Pratt v Robinson,* 71 Misc 2d 509, 511; 336 NYS2d 612, 614 (1972), held that the school district did not have the duty to establish bus stops so that the children could avoid the necessity of crossing streets. Safe delivery to the bus stop, rather than stopping the bus at a point from which the children could arrive home without crossing a street, was held to be the bus driver's duty in *Sanderlin v Central School Dist 13 J of Polk County,* 6 Or App 429, 432; 487 P2d 1399, 1400 (1971).

[3] *Earl W Baker & Co v Lagaly,* 144 F2d 344, 346 (CA 10, 1944) and *Raymond v Paradise Unified School Dist of Butte County,* 218 Cal App 2d 1, 7–8; 31 Cal Rptr 847, 851 (1963). *See also Slade v New Hanover County Board of Education,* 10 NC App 287, 295; 178 SE2d 316, 321 (1971), *cert den,* 278 NC 104; 179 SE2d 453 (1971), which affirmed the Industrial Commission's finding that the facts were sufficient to hold defendant liable.

[4] See 179 Misc 333; 39 NYS2d 103 (1941).

automobile before passing the bus * * * was for the jury * * * ." 47 NE2d 50.

Review of the above-noted cases leads us to conclude that in the case now before us the intervening cause was not so reasonably foreseeable that a jury could not reach any other conclusion than to find defendant negligent. Michigan lacks a statutory mandate that school bus drivers must remain halted in the roadway until the children pass in front of the bus to reach the other side of the road. The transportation handbook does not have the force of law, and its alleged violation is not negligence per se. Wide variations in testimony as to the length of time elapsing between the children stepping off the bus and the occurrence of the intervening event—differences of from a few minutes to more than an hour—make the issue a jury question.

Therefore, it was not error for the trial court to deny plaintiff's motion for a directed verdict. According to *Mackey v Island of Bob-Lo Co,* 39 Mich App 64, 65; 197 NW2d 151, 152 (1972):

"The test for reviewing a refusal of a directed verdict and a judgment notwithstanding the verdict is whether, viewing the facts most favorably to the opposing party, reasonable men could differ. If they can, the question is for the jury. *Little v Borman Food Stores, Inc,* 33 Mich App 609; 190 NW2d 269 (1971)."

Viewing the evidence in a light most favorable to defendant, we conclude that reasonable men could differ on the question of whether or not defendant could have reasonably foreseen the event involving the Carpenter vehicle, and find that the "totality of the circumstances" was such that this question was properly left to the jury. See *Davis v Thornton,* 384 Mich 138, 150; 180 NW2d 11 (1970).

Affirmed, costs to defendant.

All concurred.