

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

October 11, 1968

Honorable W. C. Lindsey
Criminal District Attorney
Jefferson County Courthouse
Beaumont, Texas

Opinion No. M-285

Re: Authority of Sheriff and
Constables to serve Criminal
and Civil process in com-
mercial plants or aboard
vessels.

Dear Mr. Lindsey:

You request the opinion of this office on the following questions:

"1.  Does a Constable or a Sheriff have the authority
     to go aboard a vessel which is tied up to a dock
     within his county to serve criminal or civil pro-
     cess, if the Captain of said vessel refuses to
     allow him to come aboard?" You request an answer
     to this question as to both merchant and naval
     vessels.

"2.  Does a Constable or a Sheriff have the authority to
     go into an enclosed commercial plant, such as a re-
     finery, to serve criminal or civil process, if com-
     pany personnel refuses to allow him past the enclosure?
     The enclosure referred to in second question is
     usually a Hurricane fence with a gate patrolled by
     company guards through which all traffic passes."

"3.  If it is determined that Sheriffs and Constables have
     authority to go into plants or aboard vessels, then
     what are the penalties for those who interfere and
     attempt to prevent him from serving the process."

The first question entails a consideration of state jurisdiction over both foreign and domestic merchant and naval vessels.

State jurisdiction over domestic merchant and naval vessels is limited, but not excluded by the United States Constitution and federal laws pursuant thereto.

-1384-

As to domestic merchant vessels, Article III, Section 2, Clause 1 of the United States Constitution provides "that the judicial power shall extend . . .to all cases of admiralty and maritime jurisdiction. . ."

Congress has exercised this power over admiralty as found in 28 U.S.C.A. §1333:

"The district courts shall have original jurisdiction, exclusive of the Courts of the State of:

"(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

However, as stated in 2 Am.Jur.2d, Admiralty, §7, page 724:

"The paramount power of Congress, although it excludes interference by state legislation with its exercise, is merely a limitation on the power of the states. There is a broad recognition of the authority of the states to create rights and liabilities with respect to conduct within their borders, where the state action does not run counter to federal laws or the essential features of exclusive federal jurisdiction. On the whole, it may be said that where the particular maritime subject is national in character, only Congress can legislate, but where the subject is local the states may legislate so long as their legislation is not inconsistent with valid federal legislation and does not interfere with the proper harmony or uniformity of federal law in its international or interstate operation. Thus, a state may legislate on such matters as liens for claims arising from repairs of vessels within the ports of the state, port regulations and safety in local harbors, and torts committed by vessels within such ports. A state may also levy a business license or sales tax on transactions conducted on vessels operated on a river within the boundaries of the state."

In accord, 2 C.J.S., Admiralty, §6, p. 70; Toomer v. Southwest Casualty Company, 231 F.Supp. 542 (S.D. Galveston Div., 1964) and Fuentes v. Gulf Coast Dredging Co., 54 F.2d 69 (C. C.A. 5th Cir., 1931).

Federal courts have affirmed the constitutionality of state non-resident watercraft statutes, and in Franklin v. Tomlinson Fleet Corp., 158 F.Supp 850, (Ill, 1957), the federal court upheld jurisdiction over a Delaware Corporation where service of process had been on the Illinois Secretary of State. See also Coyle v. Pope & Talbot, Inc., 207 F.Supp. 685 (E.D. Pa. 1962).

State jurisdiction over domestic naval vessels is limited by Article 1, Section 8, of the United States Constitution, which empowers Congress to "provide for the common defense", "to provide and maintain a Navy", "to make rules for the government and regulation of the land and naval forces", and "to make all laws which shall be necessary and proper for carrying into execution the foregoing powers. . ."

The above enumerated power and the doctrine of federal supremacy, as declared in McCulloch v. Maryland, 14 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), prevent service of civil and criminal process aboard a United States naval vessel over the objection of its Captain.

Congress has provided in the Uniform Code of Military Justice, 10 U.S.C.A. §814, the appropriate method by which a state may assert its jurisdiction (see Annotation 135 A.L.R. 11) over persons in military service:

> "(a) Under such regulations as the Secretary concerned may prescribe, a member of the armed forces accused of an offense against civil authority may be delivered upon request to the civil authority for trial."

The basic law governing the question of jurisdictional immunity for foreign merchant and naval vessels was laid down by Chief Justice Marshall in The Schooner Exchange v. McFaddon, 11 U.S. (7 Cranch) 287 (1812):

> "A clear distinction is to be drawn between the rights accorded to private individuals or private trading vessels, and those accorded to public armed

ships which constitute a part of the military force of the nation.

"When private individuals of one nation spread themselves through another as business or caprice may direct, mingling indiscriminately with the inhabitants of that other, or when merchant vessels enter for the purposes of trade, it would be obviously inconvenient and dangerous to society, and would subject the laws to continual infraction and the government to degradation, if such individuals or merchants did not owe temporary and local allegiance, and were not amenable to the jurisdiction of the country. Nor can the foreign sovereign have any motive for wishing such exemption. His subjects thus passing into foreign countries, are not employed by him, nor are they engaged in national pursuits. Consequently, there are powerful motives for not exempting persons of this description and no one motive for requiring it. The implied license, therefore, under which they enter, can never be construed to grant such exemption."

But where a vessel is used for commercial or private activity by a foreign government, the courts defer to a determination by the United States Department of State as to whether an immunity will be recognized. Sovereign immunity is a political or diplomatic problem rather than a legal one. Immunity is now "recognized with respect to sovereign or public acts (jure imperii) of a state but not with regard to the private acts (jure gestionis)." *Ocean Transport Co. v. Government of Republic of Ivory Coast*, 269 F.Supp. 703, 705 (1967).

In accord with the basic principle of foreign merchant vessels being amenable to State jurisdiction, a federal court in *Tardiff v. Bank Line*, 127 F.Supp. 945, (La., 1954), refused to set aside service on the Louisiana Secretary of State under the state watercraft statute. The Court affirmed federal court jurisdiction over a British corporation in an action under state law for the death of a Louisiana resident from injuries sustained on the defendant's steamship while at a dock in Louisiana.

As to naval vessels, Chief Justice Marshall stated a different rule in *The Schooner Exchange* case, supra:

"But in all respects different is the situation
of a public armed ship. She constitutes a part of
the military force of her nation; acts under the
immediate and direct command of the sovereign; is
employed by him in national objects. He has many
powerful motives for preventing those objects from
being defeated by the interference of a foreign
state. Such interference cannot take place without
affecting his power and his dignity. The implied
license, therefore, under which such vessel enters
a friendly port, may reasonably be construed, and,
it seems to the court, ought to be construed, as
containing an exemption from the jurisdiction of
the sovereign, within whose territory she claims
the rights of hospitality."

Because the State of Texas lacks jurisdiction it is clear
that a Constable or Sheriff does not have authority to go aboard
a foreign naval vessel to serve criminal or civil process. Nor
may such process be served upon a merchant vessel operated by
a foreign sovereign if the Department of State recognizes an
immunity for it.

As to other merchant vessels, both domestic and foreign,
there are no such inherent prohibitions unless the law of the
State of Texas is such as to forbid service of process if the
captain refuses permission to board.

Article 1407a, V.A.C.S. states as follows:

"Art. 1407a.   Entry on boat, vessel, ship or other
               watercraft without consent of owner.

"Section 1.   It shall be unlawful for any person,
without the consent of the owner or other person in
charge thereof, to enter upon the boat, vessel, ship,
or other watercraft of another, whether or not such
watercraft is documented or required to be numbered
or registered by or under the laws of the United States
or of the State of Texas or of any other state, nation,
country, or political entity whatsoever, while such
boat, vessel, ship, or other watercraft is on any of
the 'coastal waters' as defined in Section 3(a),

Chapter 340, Acts of the 58th Legislature, 1963, or on any channel, turning basin, or other body of water whatsoever in the State of Texas, and whether or not such boat, vessel, ship, or other watercraft be docked in passage, or otherwise.

"Section 2. Any violation of Section 1 of this Act shall constitute a misdemeanor, and for the first conviction of such a violation the punishment shall be by a fine of not more than $200, but for a second or subsequent conviction the punishment shall be by fine of not less than $50 or more than $500, or by confinement in the county jail for not more than three months, or by both such fine and imprisonment.

"Section 3. Any person found upon the boat, vessel, ship, or other watercraft of any kind or character of another under circumstances which reasonably indicate that he entered upon it without the consent of the owner or other person in charge thereof shall be subject to arrest by any city policeman, constable, sheriff, highway patrolman, ranger, game warden, or any other officer in the State of Texas, or by the deputy of any of them, without a warrant, and any such peace officer is hereby empowered to make such an arrest."

Section 3 of Article 1407a indicates that it was not the intent of the legislature to include peace officers within the purview of the "any persons" of Section 1. To hold otherwise would be to ascribe to the legislature the intent to create a sanctuary for those who would frustrate orderly processes of law enforcement and to empower peace officers to arrest such persons but to deny them entry to exercise that power.

The authority of a Constable or Sheriff to serve civil or criminal process aboard domestic or foreign merchant vessels over the objection of the Captain is the same as in an enclosed commercial plant--the subject of your second question.

With reference to service of civil process, it is recognized that an officer has no right to break into or otherwise forcibly enter a dwelling house.

"In the eye of the law, it is better that the execution of the process should be delayed, and that the officer should remain without, waiting

a favorable opportunity for the accomplishment
of his purpose, than that he should enter with
force and violence, against the wishes and pro-
tests of the householder, thus tending to breaches
of the peace and the destruction of the security
and tranquility of the home by exposing it to
attack from without. The rule is not intended
to secure immunity against service of process
but rather to afford protection to the home and
family." 42 Am.Jur., Process, 38, p. 34;
Hillman v. Edwards, 66 S.W. 788 (Tex.Civ.App. 1902,
no writ).

A pertinent statement of the law is found in 52 Tex. Jur.2d,
Sheriffs, Constables, etc., Sec. 30, as follows:

"In the absence of statutes specially authorizing
it, an officer may not break open an outer door nor
forcibly enter the dwelling house of a debtor
for the purpose of a necessary levy. Such an entry
is, in law, a trespass; the officer loses the
protection of the writ, and he is no longer invested
with the right to use reasonable force in executing
it. This rule is applicable though the officer had
previously entered through an unlocked door and
returned merely for the purpose of completing
the levy. But if lawful means are employed to
effect the seizure, the officer may use force
sufficient to overcome the force used by the defen-
dant in attempting to resist the levy. In the
event of such action the presumption is that any
force used was necessary for the performance of the
official duty, and the burden is on the plaintiff
to show the contrary."

A "home and family" enjoy a status of "tranquility"
and "protection" which is not extended to a non-dwelling, such
as an enclosed commercial plant and its employees or a merchant
vessel and its crew. The treatise, Freeman on Execution, §256 -
Of the Right to Break Inner and Outer Door to Make a Levy, p. 813,
quotes Stearnes v. Vincent, 50 Mich. 209; 45 Am.Rep. 37, for the
proposition that force may be used on business premises to serve
civil process:

"A building may be occupied partly as a dwelling and partly for business purposes, as where the occupant conducts a store for the sale of merchandise in a room fitted up for that purpose, and resides with his family in other parts of the building. In such cases the whole building is not regarded as a dwelling; and even though the two parts are approached through a common door, this door may be broken for the purpose of seizing goods in the store."

The treatise continues with a quote from Haggerty v. Wilber, 16 Johns. 288; 8 Am. Dec. 321:

"'The privilege which the law allows to a man's habitation, and which precludes the sheriff from entering, unless the outer door be open, either to arrest the party or to take his goods on execution, does not extend to a store or barn disconnected from the dwelling-house, and forming no part of the curtilage.' It has always been claimed that the refusal of the law to permit an officer to break into the debtor's dwelling to levy an execution arises not from its wish to shield the property, but solely because of its desire to preserve the sanctity of the dwelling. If this claim is well founded, we should suppose that the dwelling would be equally preserved from intrusion when the writ is against a stranger, as well as when against the owner. But this supposition is not supported by the authorities. An officer may enter the house of A for the purpose of levying upon B's goods which are therein. A forcible entry must not be made until a demand to open the doors has been met with a refusal to comply. And the right to enter depends on the fact of B's goods being in the house. If they are not there, the officer cannot justify his entry. He is a trespasser. When the officer has once lawfully entered the outer door, the sanctity of the dwelling, as regards that writ under which the entry was made, is destroyed. The door cannot now be closed upon him. "

The Texas Code of Criminal Procedure expressly provides for the use of force or violence in making arrests and in executing search warrants:

Art. 15.24 - "In making an arrest, all reasonable means are permitted to be used to effect it. No greater force, however, shall be resorted to than is necessary to secure the arrest and detention of the accused."

Art. 15.25 - "In case of felony, the officer may break down the door of any house for the purpose of making an arrest, if he be refused admittance after giving notice of his authority and purpose."

Art. 18.17 - "In the execution of a search warrant, the officer may call to his aid any number of citizens in his county, who shall be bound to aid in the execution of the same. If he is resisted in the execution of the warrant, he may use such force as is necessary to overcome the resistance, but no greater."

Art. 18.18 - "In the execution of a search warrant, the officer may break down a door or a window of any house which he is ordered to search, if he cannot effect an entrance by other less violent means; but when the warrant issues only for the purpose of discovering property stolen or otherwise obtained in violation of the penal law, without designating any particular place where it is supposed to be concealed, no such authority is given to the officer executing the same."

You are therefore advised that a Constable or Sheriff, after properly identifying himself and stating the purpose of his visit, has authority to go aboard a domestic or foreign merchant vessel over the objection of its Captain or to enter an enclosed commercial plant for the purpose of serving criminal or civil process.

Your third question asks about the penalties applicable to those who interfere and attempt to prevent a Constable or Sheriff from serving process.

Article 388, V.A.P.C., provides a penalty for opposing the arrest of another for felony.

"Whoever shall wilfully oppose or resist an officer in executing, or attempting to execute any lawful warrant for the arrest of another per-

son in a felony case shall be confined in the
penitentiary not less than two nor more than
five years. If arms be used in such resistance,
he shall be confined in the penitentiary not
less than two nor more than seven years."

Article 339, V.A.P.C., states the penalty for opposing
arrest of another for a misdemeanor.

"If any person shall wilfully oppose or resist
an officer in executing or attempting to execute
any lawful warrant for the arrest of another per-
son in a misdemeanor case, or in arresting or
attempting to arrest any person without a warrant,
where the law authorizes or requires the arrest
to be made without a warrant, he shall be fined
not less than twenty-five nor more than five
hundred dollars, and if arms be used, be fined
not less than fifty nor more than one thousand
dollars."

Article 342, V.A.P.C., conditions imposition of the above
two penalties on the process being executed in a legal manner.

"To render a person guilty of any offense included
within the meaning of articles 338 and 339 the warrant
or process must be executed or its execution attempted
in a legal manner."

Article 336, V.A.P.C., sets forth the fine for preventing
execution of civil process by means not amounting to actual
resistance.

"Whoever shall prevent or defeat the execution of
any process in a civil cause, by any means not amount-
ing to actual resistance, but which are calculated to
prevent the execution of such process, shall be fined
not exceeding five hundred dollars; evading the execu-
tion of such process is not an offense under this article."

Those who would hinder a law enforcement officer might also
become subject to Article 77 of the Penal Code. It states in part
that "an accessory is one who, knowing that an offense has been
committed, conceals the offender, or gives him any other aid in
order that he may evade an arrest or trial or the execution of his
sentence." Under Article 79 of the Penal Code, "accessories shall
be punished by the infliction of the lowest penalty to which the
principal would be liable."

## SUMMARY

A Constable or Sheriff has no authority to serve criminal or civil process on board any foreign naval vessel or any foreign merchant vessel where the United States Department of State recognizes a sovereign immunity. However, absence such recognition, a Constable or Sheriff does have authority to enter a domestic or foreign merchant vessel without the consent of the Captain to serve civil or criminal process; those denying such consent subject themselves to certain penalties and fines. A Constable or Sheriff has no authority to serve process on board a United States naval vessel; the persons upon whom such process is to be served may be delivered to local authorities in accord with federal law.

A Constable or Sheriff does have authority to serve criminal or civil process in an enclosed commercial plant; any person denying him permission to enter subjects himself to certain penalties and fines.

Very truly yours,

Crawford C. Martin
Attorney General of Texas

Prepared by Charles T. Rose
Assistant Attorney General

APPROVED:

OPINION COMMITTEE
Hawthorne Phillips, Chairman
Kerns Taylor, Co-Chairman
Robert Lattimore
Fisher Tyler
Ralph Rash
Malcolm Quick

EXECUTIVE ASSISTANT
A. J. Carubbi, Jr.