WALKER v GILBERT

Docket No. 89443. Submitted January 8, 1987, at Grand Rapids. Decided April 14, 1987. Leave to appeal applied for.

In 1976, John Allen Walker, a minor, and his sister were removed from their mother's care and placed in temporary custody with the Muskegon County Department of Social Services. The supervisor of DSS protective services, Robert Daane, assigned the case to caseworker Terry Wildfong. Wildfong placed the child with foster parents, Paul and Cheryl Gilbert. The case was later transferred from DSS protective services to DSS foster care, where it was assigned to Mary Woodroff. Although the foster care division monitored the children's daily care, protective services remained responsible for investigating allegations of child abuse and for actual custody in the dispute pending against the children's mother. When Cheryl Gilbert informed Woodroff on July 6, 1976, that her husband had slapped the minor plaintiff in the face, Woodroff reported the incident to her superiors. At the meeting which followed, Woodroff, Wildfong and Daane were present. Upon investigation by Wildfong, the Gilberts admitted a mistake in slapping the child and agreed to counseling. On August 11, 1976, a nurse who had examined Angela Walker reported to Woodroff that the child had bruises above her buttocks. When questioned, Cheryl Gilbert's explanation was that Angela had slipped while being potty trained. Woodroff reported the incident to her foster care supervisor but not to protective services. On September 23, 1976, after receiving an anonymous telephone call at approximately 4:00 P.M. charging that the Gilberts were

REFERENCES

Am Jur 2d, Municipal, School, and State Tort Liability §§ 45-49, 85 et seq.

Am Jur 2d, States, Territories, and Dependencies §§ 99 et seq.

Federal Tort Claims Act: When is government officer or employee "acting within the scope of his office or employment" for purpose of determining government liability under 28 USC § 1346(b). 6 ALR Fed 373.

State's immunity from tort liability as dependent on governmental or proprietary nature of function. 40 ALR2d 927.

punishing the children too severely, supervisor Daane left a note on a caseworker's desk requesting an investigation. Apparently the caseworker did not return to the office that afternoon and did not receive the message until the following day. However, the next morning John Walker was hospitalized for injuries from a beating inflicted by Paul Gilbert. John Walker, by his next friend, Arthur F. Raymond, brought an action in the Muskegon Circuit Court against the Gilberts, Wildfong, Daane, Woodroff and others. The court, R. Max Daniels, J., granted summary disposition in favor of Wildfong, Daane and Woodroff on the bases of governmental immunity and failure to state a claim. Plaintiffs appealed by leave granted.

The Court of Appeals *held:*

The state defendants are entitled to the protection of governmental immunity since their conduct in 1) selection of a foster family, 2) placement of the minor plaintiff with the Gilberts, and 3) continuation of the Gilbert placement after receiving and investigating reports of abuse were discretionary-decisional.

Affirmed.

GOVERNMENTAL IMMUNITY — PUBLIC EMPLOYEES.

For a public employee to be protected by governmental immunity, his allegedly tortious conduct must have (1) taken place during the course of his employment with at least a reasonable belief that it was within the scope of the official's authority, (2) been done in good faith, and (3) been done in the performance of discretionary, as opposed to ministerial, acts; discretionary acts, or "discretionary-decisional" acts, are those requiring personal deliberation, decision and judgment in the process of significant decision-making; "ministerial" acts, or "ministerial-operational" acts, are those taken in the mere execution of major decisions previously made, the executing official retaining little or no choice in the performance of a duty.

*Libner, Van Leuven & Kortering, P.C.* (by *John A. Braden*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Theodore E. Hughes,* Assistant Attorney General, for defendant state employees.

Before: MacKenzie, P.J., and Weaver and J. E. Roberts,* JJ.

Per Curiam. Plaintiff appeals by leave granted from summary disposition entered by the Muskegon Circuit Court in favor of defendants Terry Wildfong, Robert Daane, and Mary Woodroff on the bases of: (1) public employee immunity, MCR 2.116(C)(7), and (2) failure to state a claim upon which relief can be granted, MCR 2.116(C)(8).

I

In 1976 the minor plaintiff, John Allen Walker, and his sister, Angela, were removed from their mother's care and placed in temporary custody with the Muskegon County Department of Social Services. The supervisor of DSS protective services, defendant Robert Daane, assigned the case to defendant caseworker Terry Wildfong. Wildfong placed the children with foster parents, defendants Paul and Cheryl Gilbert.[1] The case was later transferred from DSS protective services to DSS foster care, where it was assigned to defendant Mary Woodroff. Although the foster care division monitored the children's daily care, protective services remained responsible for investigating allegations of child abuse and for actual custody in the dispute pending against the children's mother.

When Cheryl Gilbert informed the foster care defendant Woodroff on July 6, 1976, that her husband had slapped the minor plaintiff in the face, Woodroff reported the incident to her superiors. At the meeting which followed, defendants Woodroff, Wildfong and Daane were present. Upon

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

[1] Plaintiff's suit against the Gilberts was not dismissed and the Gilberts are not parties to this appeal.

investigation by Wildfong, the Gilberts admitted a mistake in slapping the child and agreed to counseling.

On August 11, 1976, a nurse who had examined Angela Walker reported to defendant Woodroff that the child had bruises above her buttocks. When questioned, Cheryl Gilbert's explanation was that Angela had slipped while being potty trained. Woodroff reported the incident to her foster care supervisor but not to protective services.

On September 23, 1976, after receiving an anonymous telephone call at approximately 4:00 P.M. charging that the Gilberts were punishing the children too severely, supervisor Daane left a note on a caseworker's desk requesting an investigation. Apparently the caseworker did not return to the office that afternoon and did not receive the message until the following day. However, the next morning the minor plaintiff was hospitalized for injuries from a beating inflicted by Paul Gilbert. The injuries included a fractured skull, a subdural hematoma (blood clot beneath the skull), and partial paralysis of his left side.

On February 5, 1979, plaintiff through his next friend sued the Gilberts, protective services supervisor Daane, protective services caseworker Wildfong, and unspecified DSS employees. The complaint alleged against the DSS officials a count for negligence and a count for wilful and reckless misconduct, and against the Gilberts a count for assault and battery.

Several months later, Wildfong and Daane requested accelerated judgment for lack of circuit court jurisdiction, which motion was granted.[2] However, in light of *Ross v Consumers Power Co*

[2] The circuit court held that the case should have been brought in the Court of Claims.

*(On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984), on reconsideration the court set aside its previous order and allowed plaintiff to file an amended complaint. The amended complaint added foster care worker Mary Woodroff as a named defendant and substituted a breach of contract claim for the prior wilful and reckless misconduct claim. The contract claim was later voluntarily dismissed.

Upon motion by the DSS defendants, the trial court granted summary disposition in accord with *Ross, supra,* finding that action by the state defendants had been taken in good faith during the course of their employment, was within the scope of their authority, and was discretionary-decisional in nature. Plaintiff's motion for rehearing was denied. We granted leave to appeal.

Plaintiff argues that the trial court erred when it declared the state defendants protected under the doctrine of public employee immunity. We disagree and affirm the trial court's decision.

II

*Ross, supra,* recently examined and reinterpreted the doctrine of public employee immunity, positing three requirements for a finding of "official immunity": The action must be taken (1) during the course of employment with at least a reasonable belief that it was within the scope of the official's authority, (2) in good faith, and (3) in the performance of discretionary, as opposed to ministerial, acts. *Id.,* pp 633-634. "Discretionary" acts, redefined as "discretionary-decisional," are those requiring personal deliberation, decision and judgment in the process of significant decision-making. "Ministerial" acts, redefined as "ministerial-operational," are those taken in the mere

execution of major decisions previously made, the executing official retaining little or no choice in the performance of a duty. *Id.,* pp 634-635.

Analogous cases involving suits against school officials for teacher misconduct have upheld governmental immunity to protect administrators from damages for alleged negligent screening, hiring and supervision of the teacher. *Rosacrans v Kingon,* 154 Mich App 381, 386-387; 397 NW2d 317 (1986); *Willoughby v Lehrbass,* 150 Mich App 319, 347-348; 388 NW2d 688 (1986). Consistent with the reasoning of these cases, we believe that conduct of the state defendants in this case was discretionary-decisional, thereby qualifying for immunity under *Ross.* Their personal deliberations, decisions and judgments were required during three separate phases of child placement and custody: (1) selection of a foster family; (2) initial placement of the minor plaintiff with the Gilberts; and (3) continuation of the Gilbert placement after receiving and investigating reports of abuse.

Dss employees are vested with broad powers regarding who may be certified as a foster parent and which child will go to which, home. Before placing a child in foster care, DSS must be "satisfied as to the need for a child care organization, its financial stability, the good moral character of the applicant, and that the services and facilities are conducive to the welfare of the children." MCL 722.115(1); MSA 25.358(15)(1). Agency regulations require DSS to choose a foster home where there is a "wholesome atmosphere," and where the persons in charge are of "suitable temperament to care for children" and understand the needs of children. 1979 AC, R 400.193(2) and (3). Evaluating potential foster families on such factors as "wholesome atmosphere," "suitable temperament" and understanding the needs of children, to name only a few

of many factors listed in the agency regulations, necessarily requires of the DSS decision-maker personal and subjective judgment.

Because several foster homes were available, significant decision-making was involved in selecting the Gilberts as a foster family, and that decision process remained significant even in the face of limited vacancies at the time of placement. Significant decision-making was also involved in maintaining the Gilbert placement after investigation of reported abuse: it was not until after a DSS meeting, an investigation, and the Gilberts' admission of their error and promise to attend counseling that DSS decided to continue the Gilbert placement.

Although government employees have no immunity for ultra vires activities, *Ross, supra,* p 634, we are unable to find any violation of statute or regulation on the part of DSS employees. Further, plaintiff's bald assertion of such violation without supporting argument or citation precludes an examination of the issue; it is not the duty of this Court to do plaintiff's thinking and briefing for him. *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959).

Because we apply public employee immunity to the conduct of the state defendants in this case, it is unnecessary to address remaining issues.

Affirmed.