WILLIAMS v COLEMAN

Docket No. 126124. Submitted April 16, 1992, at Detroit. Decided July 6, 1992, at 9:40 A.M.

Jennifer Williams, as personal representative of the estate of Nicole Williams, deceased, brought a wrongful death action in the Wayne Circuit Court against Rhonda Coleman and Janet Heyward, alleging that the decedent died as the proximate result of the failure of the defendants to undertake their statutorily required duty as foster-care social workers with the Wayne County Department of Social Services to report suspected child abuse and neglect to the protective services division of the DSS. Following a trial, in which there were disputed proofs concerning whether the defendants had reason to suspect child abuse and neglect, a jury returned a verdict in favor of the plaintiff. The court, John R. Kirwan, J., denied the defendants' motions for judgment notwithstanding the verdict and for a new trial. The defendants appealed.

The Court of Appeals *held:*

1. The clear legislative intent behind the reporting requirement of the Child Protection Law is the safety of children through the immediate notification of the protective services division of any suspected child abuse or neglect. Given the high priority placed on the safety of children and the limited immunity provided in that act, it is apparent that the Legislature intended through its passage to abrogate any general common-law governmental immunity enjoyed by persons who are required to report abuse and neglect.

2. Under a common-law ministerial/discretionary analysis, the defendants would not be immune from liability for their failure to report any reasonably suspected child abuse or neglect. Once they had a reasonable suspicion of child abuse or

REFERENCES

Am Jur 2d, Infants §§ 14-17, 142, 144, 214; Municipal, County, School, and State Tort Liability §§ 149, 644.

Validity, construction, and application of state statute requiring doctor or other person to report child abuse. 73 ALR4th 782.

Tort liability of public authority for failure to remove parentally abused or neglected child from parents' custody. 60 ALR4th 942.

neglect, the duty to report it to protective services was ministerial, and, accordingly, the defendants would not be immune for any negligent failure to comply with the statute's mandate. Any decision concerning the validity of information received about the existence of child abuse or neglect was not for the defendants to make, but was within the province of the workers in the protective services division after investigation.

3. The defendants failed to preserve properly for appeal the question whether the trial court erred in admitting evidence concerning the prior mental problems of the mother of the decedent. The trial court properly admitted expert testimony concerning psychology, child growth, and social work practices for the purpose of assisting the jury in understanding the evidence.

4. The trial court properly instructed the jury using the standard jury instruction concerning the inference of negligence that can be drawn upon finding a violation of a statute, inasmuch as the plaintiff alleged a violation of the Child Protection Law as a ground for negligence, that act is intended to protect against the result caused by the violation, the plaintiff was within the class protected by the act, and there was evidence supporting a finding that violation of the statutory mandate was a proximate cause of the occurrence.

Affirmed.

1. GOVERNMENTAL IMMUNITY — CHILD PROTECTION LAW — CHILD ABUSE — FAILURE TO REPORT.

Government employees who are required under the Child Protection Law to report any. child abuse or neglect that they have reasonable cause to suspect do not have common-law immunity from civil liability for injuries resulting from the negligent failure to make the required report (MCL 722.623; MSA 25.248[3]).

2. TRIAL — CHILD PROTECTION LAW — STANDARD JURY INSTRUCTIONS — VIOLATION OF STATUTE — NEGLIGENCE.

A plaintiff who is within the class protected by the Child Protection Law and who alleges that the failure of a defendant to comply with the reporting requirement of that act has proximately caused an injury is entitled to have the standard jury instruction concerning drawing an inference of negligence upon proof of violation of a statute where there is evidence supporting a finding that the violation proximately caused the alleged injury (MCL 722.633; MSA 25.248[13]; SJI2d 12.01).

*Julie H. Hurwitz, P.C.* (by *Julie H. Hurwitz*), and

*Theodore F. Spearman, P.C.* (by *Theodore F. Spearman* and *Mark Granzotto*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Stewart H. Freeman* and *Margaret A. Nelson,* Assistant Attorneys General, for the defendants.

Before: GRIBBS, P.J., and SAWYER and FITZGERALD, JJ.

FITZGERALD, J. Defendants appeal as of right a January 31, 1990, order denying their motions for judgment notwithstanding the verdict and a new trial in this wrongful death action, originally filed on May 25, 1982.[1] On August 21, 1989, a jury rendered a $900,000 verdict[2] for plaintiff. Defendants were foster-care social workers working for the Wayne County Department of Social Services. Pursuant to § 623(1) of the Child Protection Law,[3] defendants were required to report child abuse and neglect to the protective services division of the DSS. Plaintiff, decedent's sister, brought suit under MCL 722.633; MSA 25.248(13), which provides for civil liability for failure to report child abuse or neglect.[4] We affirm.

### FACTS

On March 4, 1981, twenty-three-month-old Ni-

---

[1] Plaintiff originally filed suit against multiple defendants. After numerous motions and appeals, three defendants remained at the time of trial.

[2] The jury awarded $500,000 to the estate of Nicole Williams and $100,000 to each of her four brothers and sisters. Josephine Williams' claims were dismissed by stipulation and order of the circuit court on January 26, 1990. No distribution has taken place pending appeal.

[3] MCL 722.621 *et seq.*; MSA 25.248(1) *et seq.*

[4] This cause of action arose in 1981, before the 1986 tort reform amendments of the governmental immunity statute, MCL 691.1407; MSA 3.996(107), which eliminated ministerial/discretionary distinctions.

cole Williams was found dead by police at her mother's residence. Nicole weighed twenty pounds and died of long-term nutritional deprivation or failure to thrive. Testimony revealed that although Nicole had been in the ninetieth percentile for height at the time of her birth, she was below the first percentile for her age group for both height and weight at the time of her death.

The record indicated that Josephine Williams, Nicole's mother, previously had four children removed from her custody because of her inability to care for them. Josephine Williams had a long history of hospitalizations and erratic behavior due to schizophrenia. DSS records indicated that attempts to reunite the older children with their mother were unsuccessful because of her ongoing mental health problems. Nicole, the fifth child, was born after the four older children had been removed from the mother's home. DSS workers knew that a fifth child was due, but their records contained no reference to Nicole until she was eight months of age, when plaintiff complained about her care to the DSS in December of 1979. At that time, defendant Coleman reported the concern to the protective services unit within the DSS, which investigated and found that although the conditions were marginal, Nicole was not neglected.

Plaintiff contends that defendants received additional reports of neglect both from herself and from Katie Edwards, a foster-care mother, and did not report those concerns to protective services. Plaintiff and Edwards evidently did not report their concerns directly to protective services because defendant Coleman advised them that she would act on their complaints. Two weeks before Nicole's death, Edwards talked with defendant

Coleman about the poor care Nicole was receiving and her need to be cared for away from her mother. Other than the initial 1979 report, defendant Coleman and her supervisor, defendant Heyward, did not report any subsequent suspected problems to protective services, nor did they assess whether there was a need for foster-care placement.

Coleman testified that on the occasions that she saw Nicole she seemed adequately cared for. Coleman stated that she lost track of Mrs. Williams in March of 1980 and did not obtain her new address until after Nicole's death a year later. She attempted to find Williams through the client information system. Defendants claimed that no one else contacted them with complaints or concerns about Nicole, and they did not have a sufficient basis to warrant subsequent referrals to protective services after December of 1979.

I

We are presented with the question whether governmental immunity applies to foster-care workers where they fail to report child abuse or neglect. MCL 722.623(1); MSA 25.248(3)(1)[5] imposes a statutory duty on social workers and others to make a report when they have "reasonable cause to suspect child abuse or neglect." MCL 722.633(1);

---

[5] In 1981, the pertinent part of MCL 722.623(1); MSA 25.248(3)(1) provided:

A physician, coroner . . . certified social worker, social worker, social work technician . . . who has reasonable cause to suspect child abuse or neglect immediately, by telephone or otherwise, shall make an oral report, or cause an oral report to be made, of the suspected child abuse or neglect to the department. Within 72 hours the reporting person shall file a written report as required in this act. [See 1980 PA 511, § 3(1).]

MSA 25.248(13)(1)[6] provides a civil cause of action for damages proximately caused by failure to report abuse or neglect against persons required to make reports. We find that whether this issue is analyzed from a statutory-construction and legislative-intent framework or from a *Ross*[7] immunity framework, the result is the same. Under the facts before us, the social workers were not immune.

Plaintiff first argues that the prescribed reporting mechanism in the Child Protection Law eliminates any choices related to reporting and any immunity defense that defendants might otherwise have. Defendants argue that they still must exercise some judgment in deciding how much information will give them reasonable cause to suspect abuse or neglect. Defendants also assert that although the Legislature created immunity for good-faith reporting,[8] it did not specifically limit any other immunity arising from sources other than the Child Protection Law. Plaintiff responds that the Legislature, by implication, rejected other forms of immunity when it made no provision for

[6] In 1981, MCL 722.633(1); MSA 25.248(13)(1) provided in pertinent part:

   A person required to report an instance of suspected child abuse or neglect who fails to do so is civilly liable for the damages proximately caused by the failure. [See 1978 PA 252, § 13(1).]

[7] *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984).

[8] In 1981, MCL 722.625; MSA 25.248(5) provided:

   The identity of a reporting person shall be confidential subject to disclosure only with the consent of that person or by judicial process. A person acting in good faith who makes a report or assists in any other requirement of this act shall be immune from civil or criminal liability which might otherwise be incurred thereby. A person making a report or assisting in any other requirement of this act shall be presumed to have acted in good faith. This immunity from civil or criminal liability extends only to acts done pursuant to this act and does not extend to a negligent act which causes person injury or death or to the malpractice of a physician which results in personal injury or death. [See 1975 PA 238, § 5.]

any other form of immunity in the Child Protection Law.

In its ruling on immunity, the trial court stated that immunity for a government employee was statutory and that the Child Protection Law imposed specific duties and liability that rendered defendants not immune. Defendants argue that the trial court erred in relying on the assumption that immunity for governmental employees was created by statute, because individual employee immunity was not at that time a creature of statute, but of the common law, as articulated in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984). We agree. In 1984, before the Legislature's enactment of the tort reform amendments, the Supreme Court noted that whatever immunity that existed for public employees in Michigan was provided by the common law. *Id.* at 678-679. Defendants argue that the Child Protection Law must be strictly construed because common-law defenses such as immunity may not be abolished absent a clear legislative intent to do so. *Rusinek v Schultz, Snyder & Steele Lumber Co,* 411 Mich 502, 507-508; 309 NW2d 163 (1981). However, a statute must be construed sensibly and in harmony with the legislative purpose, *id.* at 508; *In re Cameron's Estate,* 170 Mich 578, 582; 136 NW 451 (1912), and statutes should be construed to effectuate their purpose, *In re Barnhart Estate,* 127 Mich App 381, 387; 339 NW2d 28 (1983). In addition, a remedial statute, such as the Child Protection Law, that attempts to protect the public health and general welfare should be liberally construed. *Soap & Detergent Ass'n v Natural Resources Comm,* 415 Mich 728, 740; 330 NW2d 346 (1982), citing 3 Sands, Sutherland Statutory Construction (4th ed), § 65.03, p 163.

If the maxim *expressio unius est exclusio alter-*

*ius* is applied to the Child Protection Law, plaintiff's argument that the specifics of the Child Protection Law negate governmental immunity for those persons required to report is reasonable. In *Feld v Robert & Charles Beauty Salon,* 435 Mich 352, 363, n 11; 459 NW2d 279 (1990), the Court cited the interpretation of the maxim in 2A Sands, Sutherland Statutory Construction (4th ed), § 47.23, p 194:

> [*Expressio unius est exclusio alterius*] is applied to statutory interpretation, where a form of conduct, the manner of its performance and operation, and the persons and things to which it refers are designated, there is an inference that all omissions should be understood as exclusions. "Where what is expressed in a statute is creative, and not in a proceeding according to the course of the common law, it is exclusive, and the power exists only to the extent plainly granted. Where a statute creates and regulates, and prescribes the mode and names the parties granted right to invoke its provisions, that mode must be followed and none other, and such parties only may act." The method prescribed in a statute for enforcing the rights provided in it is likewise presumed to be exclusive.

The statute prescribes that the social workers and others are required to report suspected child abuse or neglect. The reporting mechanism is designated, and the listed reporters are assured of immunity for good-faith reporting and are informed of the potential liabilities of failing to report. The list of persons required to report includes many persons who could be government employees.[9] By providing immunity for reporting,

[9] In 1981, MCL 722.623(1); MSA 25.248(3)(1) required persons in the following categories to report:

physician, coroner, dentist, medical examiner, nurse, audiologist, certified social worker, social worker, social work techni-

the Legislature by specific implication negated other forms of immunity these persons might have.

Even though the immunity status of governmental employees in 1981 was provided by the common law, the general language of the Child Protection Law reveals the Legislature's intent to apply the statute to the persons listed, regardless of their employment status. A review of the legislative history of the Child Protection Law reveals that the Legislature recognized the need to strengthen the reporting requirement in order to protect abused and neglected children. It was noted that there were many problems caused by delays in reporting incidents of child abuse and neglect under the prior law, which had not required prompt reporting and had required the reporting person to have the child suspected of being abused examined by a physician before reporting the abuse to the DSS. House Legislative Analysis, HB 4214, September 26, 1975. This requirement was unreasonable and was difficult to enforce. *Id.* House Bill 4214, which became 1975 PA 238, the Child Protection Law, strengthened the penalties for persons who were aware of cases of child abuse or neglect and did not report them to the proper authorities. "Some believe that the threat of punishment will encourage more reporting and therefore, protection of the health and safety of more abused and neglected children." *Id.*

In 1984 in the analysis of House Bill 4177, which would become 1984 PA 418 and which added psychologists, family therapists, and emergency medical personnel to the list of persons who are required to report, it was noted: "These professionals are in a position to see evidence of abuse in

cian, school administrator, school counselor or teacher, law enforcement officer, and regulated child care provider. [See 1980 PA 511, § 3(1).]

families, and should be required to report to DSS so that appropriate action could be taken to ensure the safety of the child." House Legislative Analysis, HB 4177, May 14, 1984. This amendment brought much opposition from the counseling groups who dealt with abusers, because they wanted the option to retain confidentiality in their communication with their clients and to be able to use their discretion in deciding when reporting would be in the best interests of the child. *Id.*

When in 1988 further amendments of the act were being considered in House Bill 4157, which would become 1988 PA 372, the therapist groups repeated their opposition to the reporting requirement, claiming that lawyers, priests, and ministers were still exempt from reporting even though they did not provide treatment to abusers. House Legislative Analysis, HB 4157, June 14, 1988. The Legislature stood firm on its position that the rights of children to be safe should prevail, even though reporting inconvenienced some care providers. Through this evolutionary process, the Legislature made clear its intent to have a strong reporting system.

This implied priority system is equally applicable to the governmental immunity argument. If the Legislature's priority was the safety of children, by implication governmental immunity does not apply to those persons required to report. Although the Legislature did not explicitly exempt social workers, or anyone else, from governmental immunity, it made clear that child safety is a priority and that the needs of the listed professionals are secondary where it comes to reporting. Consequently, our analysis leads us to conclude that through the Child Protection Law the Legislature intended to abrogate established immunity rules of the common law related to persons re-

quired to report abuse and neglect.[10] Our holding is further supported by the governmental-immunity analysis found in the following section.

II

*Ross* provides that when a claim of common-law immunity is asserted by a public employee, a ministerial/discretionary analysis is necessary. *Ross* at 631-632. Our analysis of whether a decision by a foster-care social worker with regard to the reporting of child abuse and neglect is discretionary or ministerial in nature is consistent with the trial court's analysis of that issue.

In *Ross, supra* at 633-634, the Court established that governmental employees are immune from tort liability if they are acting or reasonably believe they are acting in the course of their employment, acting in good faith, and performing discretionary, as opposed to ministerial, acts. Plaintiff argues that even if defendants could claim immunity, the specific reporting conduct is ministerial and not covered by immunity. Defendants claim that the determination what constitutes "reasonable cause to suspect child abuse or neglect" is a discretionary function. They argue that the decision to report involves significant decision making to assess the reasonableness and dependability of the information before a decision to refer could be made. This Court has previously rejected such an argument in the private sector.

In *People v Cavaiani*, 172 Mich App 706, 714-715; 432 NW2d 409 (1988), this Court rejected a psychologist's claim that he had to determine whether information he received related to possible child abuse was reasonable:

---

[10] This holding does not preclude other applicable defenses that may be available.

We find the words "reasonable cause to suspect" speak for themselves and provide fair notice of the conduct expected in reporting suspected child abuse. Based upon the fact that defendant was told by his patient, the victim, that her father was fondling her breasts, the § 3 reporting provisions are not vague.

In this case, the circuit court suggested that defendant, in the course of exercising professional judgment, might have concluded that the information supplied to him indicating that the victim was being abused was inaccurate or some kind of fantasy. That hardly makes the statute vague or overbroad. Defendant had reasonable suspicion of child abuse, but concluded that his suspicions were not factually founded. With respect to defendant's legal obligations under § 3, it was not for him to make this determination, but for the responsible investigative agencies, such as the Department of Social Services, to make. *While defendant is free to decide that the victim's allegations are untrue for purposes of rendering professional treatment, he is not free to arrogate to himself the right to foreclose the possibility of a legal investigation by the state.* The state has different interests, and its sovereignty is offended by child abuse. [Emphasis added.]

In the present case, defendants stated that their decisions not to refer complaints of neglect were based on their own assessment of the unreliability of the information. *Cavaiani* refutes that approach. Defendants made an initial referral to protective services in December of 1979, which resulted in protective services making an assessment that the child was in a marginal situation but not at high risk. However, when defendants received subsequent calls from the victim's sister, and particularly from the foster mother two weeks before Nicole's death, they made no subsequent referrals, nor did they assess the situation for foster-care

placement as they had done for Nicole's four older brothers and sisters.

Defendants argue that the trial court erroneously focused on the acts needed to file the actual report, rather than the initial decision making, and that they had no duty to supervise or monitor Nicole's care because she was not a ward of the state. We disagree. The specific acts complained of, rather than the general nature of the activity, must be examined. *Ross, supra* at 634-635.

Defendants rely on case law that focuses on the involved decision making in placing children in foster homes. *Walker v Gilbert,* 160 Mich App 674; 408 NW2d 423 (1987); *Williams v Horton,* 175 Mich App 25; 437 NW2d 18 (1989). In *Gilbert v Dep't of Social Services,* 146 Mich App 124; 380 NW2d 74 (1985), this Court found that a protective services worker's good-faith decision to continue an investigation of child abuse was a discretionary decision and therefore immune from suit. Judge MacKenzie's concurrence also held that to the extent that the trial court found the immunity section of the Child Protection Law, MCL 722.625; MSA 25.248(5), applicable to the protective services worker she would affirm.

However, the facts before us present the converse of that situation and illustrate the need to make a very clear distinction in the role of the social workers involved. The DSS is charged with the responsibility to investigate reported cases of child abuse or neglect. MCL 722.628; MSA 25.248(8). The DSS designates a particular entity or unit within the department to investigate reports of suspected child abuse or neglect when received. Those persons who investigate are often social workers. However, the DSS also employs social workers in other capacities, such as the foster-care workers in the present case. The role of those

social workers is distinctly different from that of protective services social workers in that the protective services worker has the duty to investigate reports, while foster-care social workers only have the duty to report.

The social worker role becomes somewhat blurred when the foster-care worker is already working with a family in placing some of the children and not working with other children in the same family. Case law supports the foster-care worker's discretionary decision making related to placing children in foster care. Defendants in this case rely on that blur of roles to argue discretionary decision making related to child neglect reports regarding Nicole, over whom they had no jurisdiction. But with no jurisdiction over this child and no apparent plans to obtain jurisdiction over the child, defendants' roles were governed purely by the Child Protection Law. We find that reporting role under these facts to be ministerial.

In *Green v Berrien General Hosp Auxiliary, Inc,* 437 Mich 1, 13-14; 464 NW2d 703 (1990), the Court analyzed the role and decision processes of nurses in suctioning a patient's breathing tube:

> [T]he defendants made a series of decisions, but because wide latitude of choice did not exist in respect to acting or failing to act, these decisions are most properly characterized as ministerial. Even ministerial acts require minor decision making and involve some measure of personal deliberation and judgment. However, the test articulated in *Ross* does not shield such decisions from immunity.

In the present case, the social workers may have made a series of decisions, but the latitude of choices they had was narrow: Do we report suspected child abuse or not? The actual decision

concerning the validity of the information was not theirs to make, especially in light of the information regarding the family they then possessed. That was the decision of the protective services workers to whom they were required to report. Consequently, immunity is not applicable under these facts. See *Hickey v Zezulka (On Resubmission),* 439 Mich 408, 433-434; — NW2d — (1992).

III

Defendants next claim that the trial court erred in allowing the admission of the past medical records of Josephine Williams. Plaintiff's counsel sought to have excerpts of the medical records related to her hospital commitments between 1969 and 1977 admitted for notice purposes only. Defendants claimed that providing official documents for notice purposes presumes the contents to be accurate and truthful and that they were not properly admitted under any hearsay exception. Initially at trial defense counsel stipulated to the authenticity of the medical records, but subsequently objected on foundation and relevancy grounds. On appeal, defendants raise hearsay objections for the first time. Objections raised on one ground below are insufficient to preserve an appellate attack based on different grounds. *People v Michael,* 181 Mich App 236, 238; 448 NW2d 786 (1989); *In re Davis,* 166 Mich App 735, 738; 420 NW2d 872 (1988).

The decision whether to admit evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *People v Watkins,* 176 Mich App 428, 430; 440 NW2d 36 (1989); *Kochoian v Allstate Ins Co,* 168 Mich App 1, 12; 423 NW2d 913 (1988). A trial court's assessment of the probative value and prejudicial effect of evidence will not be reversed

on appeal absent an abuse of discretion. *Gillam v Lloyd,* 172 Mich App 563, 586; 432 NW2d 356 (1988). Error may not be predicated on an evidentiary ruling unless a substantial right was affected. MRE 103(a); *Temple v Kelel Distributing Co,* 183 Mich App 326, 329; 454 NW2d 610 (1990). This issue was not preserved, and no substantial right was affected. DSS records indicated knowledge of significant mental health problems to the extent to hinder the mother's ability to parent. At most, the evidence admitted was cumulative. We find no error.

Defendants next claim error in the admission of expert testimony by plaintiff related to schizophrenia, child growth and development, and social work practice. The experts were used to illustrate that the known history of child neglect and mental illness of Josephine Williams should have put defendants on notice, so that any subsequent information about Nicole's condition that came to their attention should have been considered sufficient to establish reasonable cause to suspect neglect. The testimony of the experts was also used to counter the testimony of defendants' witnesses. In this case, the testimony of the experts was helpful to the jury in understanding the evidence and making its decision. *People v Smith,* 425 Mich 98, 105; 387 NW2d 814 (1986); *King v Taylor Chrysler-Plymouth, Inc,* 184 Mich App 204, 215; 457 NW2d 42 (1990). The trial court did not err in admitting this evidence.

IV

Defendants also claim that the trial court erred in instructing the jury under SJI2d 12.01. The court instructed the jury as follows:

Now, we have, members of the jury, a certain

statute which applies to this case. Now, the Child Protection Act provides that: A) Any social worker or social work technician who has reasonable cause to suspect child neglect must immediately by telephone or otherwise make an oral report or cause an oral report to be made to the protective services unit of DSS, the Department of Social Services. B) Within 72 hours after making the report, the person making the report must notify the person in charge of their agency. C) Within 24 hours after receiving a report, the protective services unit must commence an investigation of the child suspected of being neglected. D) A person required to report an instance of suspected child neglect who failed to do so is civilly liable for the damages proximately caused by the failure. E) Child neglect means harm to a child's health or welfare by a person responsible for the child's health or welfare which occurred through negligent treatment, including the failure to provide adequate food, clothing, shelter or medical care.

If you find that the defendant or defendants or any of them violated this statute before or at the time of Nicole Williams' death you may infer that the defendants or any of them were negligent. You must then decide whether such negligence was a proximate cause of Nicole's death.

Defendants argue that the court abused its discretion because that instruction is applicable only to violations of penal or safety statutes and the Child Protection Law does not create or fix a standard of reasonableness. We disagree. The instruction is to be given if a plaintiff has alleged a statutory violation as a ground for negligence and if the statute is intended to protect against the result of the violation, the plaintiff is within the class intended to be protected by the statute, and the evidence will support a finding that the violation was a proximate contributing cause of the occurrence. Note on Use for SJI 12.01, Violation of

Statute; *Klanseck v Anderson Sales & Service, Inc,* 426 Mich 78, 87; 393 NW2d 356 (1986).

The Child Protection Law provides both a criminal penalty and a civil cause of action for proximately caused damages in the event of the failure to make the statutorily required report. MCL 722.633(1) and (2); MSA 25.248(13)(1) and (2). The statute was created to protect children from the results of neglect and abuse. Nicole died as a result of neglect. The evidence presented at trial supported a finding that the failure to report the suspected neglect, which would have initiated an investigation and possible removal of Nicole from her mother, could have been a proximate cause of Nicole's death. The prerequisites for the use of the instruction were met.

The determination whether an instruction is accurate and applicable in view of all the factors present in a particular case is in the sound discretion of the trial court. *Murphy v Muskegon Co,* 162 Mich App 609, 617; 413 NW2d 73 (1987). There is no error requiring reversal if, on balance, the theories of the parties and the applicable law were adequately and fairly presented to the jury. *Weigerink v Mitts & Merrill,* 182 Mich App 546, 548; 452 NW2d 872 (1990). After reviewing the jury instructions as a whole, we find that the trial court thoroughly, adequately, and fairly instructed the jury with regard to the law. The trial court did not abuse its discretion.

Affirmed.