Stacy SCHOLLENBERGER, Plaintiff,

v.

SEARS, ROEBUCK & CO., Defendant.

Civil A. No. 94–40560.

United States District Court,
E.D. Michigan,
Southern Division.

May 16, 1996.

Charles C. Dewitt, Jr., DeWitt, Balke, Detroit, MI, for Sears, Roebuck & Co.

Ronald S. Smith, Robert Liss, Birmingham, MI, for Stacy Schollenberger.

## JUDGMENT

GADOLA, District Judge.

This action came before this court, the Honorable Paul V. Gadola, District Judge presiding, and the issues having been fully presented and the court being fully advised in the premises, and a decision having been duly rendered,

**IT IS ORDERED AND ADJUDGED** that the plaintiff, Stacy Schollenberger, take nothing in this action against the defendant, Sears, Roebuck & Co., and that the claims be dismissed with prejudice.

**IT IS FURTHER ORDERED** that the clerk of this court serve a copy of this judgment by United States mail on counsel for the parties named in the caption above.

**SO ORDERED.**

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

Before this court is the defendant, Sears, Roebuck & Co.'s ("Sears") motion for summary judgment in this personal injury negligence action. The relevant facts giving rise to this action and this motion are as follows. On the afternoon of August 2, 1992, the plaintiff, Stacy Schollenberger, and her mother, Gwen Schollenberger, entered the Home Life Department of the Lakeside Mall Sears store in Sterling Heights, Michigan, where they were shopping for furniture. Because Schollenberger suffers from an acid maltase deficiency, a form of muscular dystrophy, she is able to walk only short distances and she traveled through the store in her manual wheelchair. Schollenberger and her mother stopped to look at recliners at the recliner display, which was described as a series of four large half-circle platforms stacked to create a tier effect. The platforms were connected by four ramps which run down the center of the display. The first ramp, from the main floor of the department to the first platform, is 31 inches long, 49 inches wide and has a 6 inch vertical rise. The entire display, including the ramps, is carpeted by a ¼" indoor/outdoor grade carpeting.

As her mother looked at recliners on the first platform, Schollenberger attempted to ascend the first ramp to examine a recliner on the second platform. Schollenberger acknowledged that she thought the ramp may have been too steep to ascend without assistance. Nonetheless, Schollenberger believed she was strong enough to wheel herself up the ramp anyway. Unfortunately, she was not. Schollenberger only made it half way up the ramp before her wheelchair tipped backwards, causing her to strike her head on the tiled main floor.

Sears store personnel, Jack Heiss and Barbara Newberry–Dona, assisted Schollenberger and her mother, gave Schollenberger a cold compress, interviewed Schollenberger's mother and prepared an accident report. According to that report, there were no foreign substances or any unusual surface conditions present on the ramp. Newberry offered to call an ambulance, but Schollenberger's mother decided to drive her daughter to the hospital herself. Schollenberger was initially treated at Troy Beaumont Hospital for a bump on the back of her head and released. She returned to the hospital later, complaining of a severe headache and nausea. She was discharged the next day with some pain but her examination revealed no evidence of concussion or significant cerebral or cervical trauma.

Schollenberger claims that she suffers from intermittent migraine headaches and neck pain as a result of the accident. Schollenberger initially filed her complaint with the Circuit Court of Macomb County, Michigan on July 5, 1994, seeking damages for these injuries under theories of negligent design and construction and failure to warn. Sears removed the action to this court on October 12, 1994, based upon diversity of citizenship. Sears filed this motion for summary judgment on October 30, 1995.

### I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission*, 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

■ A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration*, 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *See Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir.1993).

■ Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991).

## II. Elements of a Negligence Action Based upon a Theory of Premises Liability Under Michigan Law

■ Under Michigan law, a plaintiff may state a prima facie case of negligence by showing that (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached that duty, (3) the defendant's breach proximately caused the plaintiff's injury, and (4) the plaintiff suffered damage. *Riddle v. McLouth Steel Products*, 440 Mich. 85, 96, 485 N.W.2d 676 (1992); *Berryman v. Kmart Corp.*, 193 Mich.App. 88, 92, 483 N.W.2d 642 (1992). The central issue raised in this motion concerns the defendant's duty of care to the plaintiff. The threshold question of duty of care in a negligence action is a question of law to be decided by the trial court. *Bunch v. Long John Silvers, Inc.*, 878 F.Supp. 1044, 1047 (E.D.Mich.1995); *Riddle*, 440 Mich. at 95, 485 N.W.2d 676.

■ The applicable Michigan law on premises liability provides that where the plaintiff is a business invitee, the premises owner has a duty to exercise due care to protect the invitee from dangerous conditions. *Riddle*, 440 Mich. at 96, 485 N.W.2d 676. In this

regard, the Michigan courts have adopted the principles of premises liability articulated in Restatement (Second) of Torts § 343, which provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965); *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 609, 537 N.W.2d 185 (1995); *Riddle*, 440 Mich. at 93, 485 N.W.2d 676. One important limitation upon the landowner's duty is found in section 343A of the Restatement:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Restatement (Second) Torts § 343A(1) (1965); *Bertrand*, 449 Mich. at 610, 537 N.W.2d 185; *Riddle*, 440 Mich. at 96, 485 N.W.2d 676. Accordingly, Michigan courts have recognized that where the dangers giving rise to an invitee's injuries were known to the invitee or were so obvious that the invitee might reasonably be expected to have discovered them, "an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Riddle*, 440 Mich. at 96, 485 N.W.2d 676; *Bertrand*, 449 Mich. at 610, 537 N.W.2d 185 (recognizing that "[w]here a condition is open and obvious, the scope of the possessor's duty may be limited."). As comment e to the section 343A of Restatement provides, an invitee is entitled to nothing more than knowledge of the dangerous conditions which will enable him to balance intelligently the advantages and risks of entering the premises. Moreover, the possessor may assume that an invitee will protect himself from the known or obvious danger by the exercise of reasonable care or voluntarily assume the harm resulting from his failure to do so. *See* Restatement (Second) of Torts § 343A cmt. e; *Bunch*, 878 F.Supp. at 1047.

Where the risk of harm from the dangerous condition remains unreasonable, however, irrespective of its obviousness or the invitee's knowledge of it, Michigan courts have acknowledged that the open and obvious doctrine does not relieve the invitor of its general duty of reasonable care. *Bertrand*, 449 Mich. at 611, 537 N.W.2d 185; *Riddle*, 440 Mich. at 97, 485 N.W.2d 676; Restatement (Second) of Torts § 343A cmt. f. It should be noted that, in imposing a general duty to protect invitees from unreasonable risks of harm, the Michigan courts have not sought to make invitors absolute insurers of the safety of their invitees. *Bertrand*, 449 Mich. at 614, 537 N.W.2d 185 (citing *Quinlivan v. Great Atlantic & Pacific Tea Co., Inc.*, 395 Mich. 244, 261, 235 N.W.2d 732 (1975)). As the Michigan Supreme Court has recently explained:

> Under ordinary circumstances, the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary [conditions] "foolproof." *Bertrand*, 449 Mich. at 616–17, 537 N.W.2d 185.

Accordingly, the general duty to protect or warn about known or obvious dangers is triggered only where some "special aspect" of the allegedly dangerous condition, such as its "character, location, or surrounding conditions," indicates that the risk of harm was unreasonable. *Bertrand*, 449 Mich. at 617, 537 N.W.2d 185. Otherwise, the invitor is relieved of its duty toward an invitee who is aware of the danger. *Bunch*, 878 F.Supp. at 1047; *Riddle*, 440 Mich. at 96, 485 N.W.2d 676.

### III. Discussion

In its motion for summary judgment, Sears asserts that it is not liable for Schollenberger's injuries as a matter of law because the risk presented by the ramp was

open and obvious to Schollenberger before she attempted to ascend it. Sears submits that Michigan law provides that an invitor owes no duty to protect or warn an invitee of known or obvious dangers unless it should anticipate injury to the invitee despite the knowledge. Accordingly, Sears contends that Schollenberger has failed to state a prima facie case of negligent design and construction or failure to warn because Schollenberger has not adduced facts to demonstrate that the ramp was unreasonably dangerous for its intended (aesthetic) purpose.

Schollenberger responds that there is sufficient evidence to create an issue of fact concerning her allegation that the ramp was too steep for wheelchair use. Specifically, Schollenberger asserts that the ramp was unreasonably steep for wheelchair access because the slope of the ramp exceeded the slope permitted for access ramps under the Michigan Construction Code and the Americans With Disabilities Act Accessibility Guidelines. Moreover, Schollenberger submits that, because the risk of harm was unreasonable, the "open and obvious" defense does not relieve Sears of its duty of reasonable care toward its invitees and the question of whether Sears breached its duty of reasonable care presents a factual issue for the jury which precludes summary judgment.

■ Review of the record discloses that the dangers presented by the ramp were open and obvious to Schollenberger before she attempted to ascend it. In her deposition testimony, Schollenberger specifically admitted that she had an opportunity to assess the ramp and her physical strength to determine whether she was capable of ascending it without assistance before she attempted to ascend:

Q. And once your mother had pushed you to approximately five feet from the ramp, what happened?

A. She was looking at one of the chairs and I saw a chair that I wanted to look at so I was pushing myself towards the ramp and assessing to see if it was something I could accomplish.

\* \* \* \* \* \*

Q. So you decided to attempt to go up the ramp and look at that recliner, correct?

A. Correct.

Q. And you said you were assessing the ramp?

A. Yes.

Q. What do you mean by that?

A. If I felt it was too steep to go up, I would have waited for my mother to help me go up and take a look at the chair I was looking at.

(Dep. at 42) Schollenberger also testified about how she determined that the ramp was not too steep for her to ascend:

Q. And I assume that after you assessed the ramp, you made a determination that it did not appear too steep?

A. Correct.

Q. And that you believed that you could wheel yourself up that ramp?

A. Correct.

\* \* \* \* \* \*

Q. Did you believe that the ramp was adequately lit when you used it?

A. No.

Q. Did you believe that prior to trying to go up the ramp?

A. That to me, in my way of thinking it didn't—as long as I felt I was able to go up that ramp for the amount of lighting that was there, I still could have done it.

Q. You had enough lighting to make the assessment?

A. Correct.

(Dep. at 42, 65–66) Finally, Schollenberger testified that she recognized that if the ramp were too steep, there would be a risk of the chair tipping backwards if she attempted to ascend the ramp unassisted:

Q. Did you consider yourself to be experienced in wheelchair use?

A. Yes.

Q. You understood that if a ramp was too steep, it could pose a danger to you if you tried to negotiate it on your own?

A. Correct.

Q. You understood that there would potentially be a danger of the chair tipping backwards?

A. Correct.

Q. Did you also know that it was safer for someone to assist you when you were negotiating a ramp as opposed to trying to do that yourself?

A. The possibility was there, yes.

(Dep. at 56) Schollenberger's statements demonstrate that the danger posed by the ramp was not only open and obvious, but known to her before she attempted to ascend. Schollenberger does not contest this in her response brief. Thus, it is undisputed that the ramp and the risk it posed was "open and obvious." *Novotney v. Burger King Corp.*, 198 Mich.App. 470, 473, 499 N.W.2d 379 (1993) (holding that a condition is considered "open and obvious" if the dangerous characteristics are "readily apparent or easily discoverable upon casual inspection by the average user of ordinary intelligence."); *Bunch*, 878 F.Supp. at 1047 (concluding that dangerous condition was "open and obvious" because the plaintiff had seen it before she was injured). Accordingly, under the authorities discussed above, Sears did not owe a duty to warn Schollenberger of, or protect her from, the known danger of the ramp, unless the risk was unreasonable despite her knowledge of the risk.

■ Having determined that the risk was "open and obvious" to Schollenberger, this court must next determine whether Sears should have anticipated Schollenberger's injury despite her knowledge of the risk. This court may grant Sears' motion for summary judgment only if no question of fact exists concerning whether the risk of harm posed by the ramp was unreasonable. This court is precluded from granting summary judgment if the proffered evidence creates a question of fact as to the reasonableness of harm posed by the open and obvious danger. In that event, questions concerning the scope of Sears' duty and the reasonableness of its conduct become questions for the jury to decide. *Bertrand*, 449 Mich. at 617, 537 N.W.2d 185 (holding that the question of what constitutes reasonable care in a situa-

tion involving an unreasonable danger is a question of fact to be submitted to the jury).

Schollenberger submits that the risk created by the ramp was unreasonable because the slope of the ramp was nearly twice the slope permitted for wheelchair ramps under state law and federal guidelines. Specifically, Schollenberger asserts that the 1:5.17 slope of the ramp was more than twice as steep as the 1:12 maximum slope authorized by the Michigan Construction Code for access ramps and nearly twice as steep as the 1:10 maximum slope allowed under the guidelines for the American With Disabilities Act. *See* 42 U.S.C. § 12204. The existence of these guidelines, Schollenberger contends, provides evidence that the ramp was unreasonably steep for wheelchair use and demonstrates that Sears had notice of the unreasonable danger created by the ramp.

Sears responds that the slope requirements contained in § 4.1.6(3)(a) of the Americans With Disability Act Accessibility Guidelines do not apply to its display ramp because the ramp was built in 1990 and the guidelines did not take effect until January 26, 1992. Moreover, Sears argues that, because the ramp is only part of a merchandise display, and not part of a "path connecting all accessible elements and spaces" of the store, it is not an "accessible route" within the meaning of the guidelines. Thus, Sears reasons, the slope restrictions of those guidelines do not apply to this ramp and cannot support Schollenberger's claims of unreasonableness.

Sears further submits that Schollenberger's reliance upon the slope restrictions contained in § 815.3 of the Michigan Construction Code ("Code") is also misplaced. First, Sears contends that those restrictions, by their terms, apply only to ramps that: (1) provide "a vertical means of access to or egress from a building," (2) "are required for access to building areas for the physically handicapped," or (3) are used to accommodate "small changes in floor elevations which are a hazard in themselves." Because its ramp was only part of a display platform, Sears insists, the slope restrictions contained in the Code do not apply to it. Second, Sears argues that, even if the Code applies to this ramp, the ramp conforms to the Code as

evidenced by the fact that the City of Sterling Heights Building Department reviewed and approved both the design and construction of the display platform and ramp. Sears reasons that the building permit and Certificate of Occupancy issued by the City, which can only be issued under the State Construction Code Act of 1972 when the design and construction involved comply with the Code and other applicable laws and ordinances, demonstrate that the ramp does not run afoul of the building codes. *See* M.C.L.A. §§ 125.1511, 125.1513.

 Although neither party has directly addressed the issue, it is clear that Schollenberger's unreasonableness argument implicates the doctrine of negligence per se because it is premised upon an alleged violation of statutes and/or regulations. The Michigan Supreme Court has recognized that a violation of a safety statute may be admitted as evidence bearing on the question of negligence. *Klanseck v. Anderson Sales & Service, Inc.*, 426 Mich. 78, 86, 393 N.W.2d 356 (1986) (discussing the rationale behind the negligence per se doctrine). Indeed, Michigan courts have employed a rebuttable presumption of negligence for claims based upon a violation of a statute. *Massey v. Scripter*, 401 Mich. 385, 258 N.W.2d 44 (1977); *Hack v. Foster*, 89 Mich.App. 254, 280 N.W.2d 503 (1979). This presumption does not apply, however, to violations of duties imposed by rules and regulations, even if they are promulgated pursuant to a statute. *Price v. Manistique Area Public Schools*, 54 Mich.App. 127, 131, 220 N.W.2d 325 (1974); *Douglas v. Edgewater Park Co.*, 369 Mich. 320, 328, 119 N.W.2d 567 (1963) (declining to extend the "rigid" negligence per se doctrine to administrative rules and regulations).

 To invoke the negligence per se doctrine, a plaintiff must do more than simply allege that a defendant violated a statutory provision. The plaintiff must also submit some evidence that the statute was intended to protect against the result caused by the statutory violation, that the plaintiff was within the class of individuals protected by the statute and that the violation of the statutory mandate was a proximate cause of the injury or occurrence. *Williams v. Coleman,*

194 Mich.App. 606, 622, 488 N.W.2d 464 (1992); *Klanseck*, 426 Mich. at 87, 393 N.W.2d 356. The question of whether the plaintiff has submitted sufficient evidence to rely upon a statutory violation as a ground for negligence is to be determined by the court as a matter of law. *Klanseck*, 426 Mich. at 90, 393 N.W.2d 356.

Review of the Americans with Disabilities Act Accessibility Guidelines and the Michigan Construction Code demonstrates that summary judgment is appropriate because Schollenberger has failed to proffer any evidence of a statutory or regulatory violation. First, Sears correctly points out that the Accessibility Guidelines are inapplicable to this ramp because they were enacted after the ramp was constructed. The records submitted from the Sterling Heights permit file disclose that this ramp was constructed between July 24, 1990, when the building permit was issued, and December 21, 1990, when the final inspection was completed. The Accessibility Guidelines were not even issued until July 26, 1991 and did not become effective until January 26, 1992. *See* 36 C.F.R. § 1191.1. Obviously, Sears was not obligated to construct the ramp in compliance with the slope requirements prescribed in the latter-promulgated Accessibility Guidelines. Schollenberger has submitted no evidence or authority to dispute this. Schollenberger has also failed to provide any authority to refute Sears' claim that the ramp does not constitute an "accessible route" as defined in the Accessibility Guidelines. *See* 36 C.F.R. § 1191.1 (App. A), pp. 648, 674. Accordingly, Schollenberger cannot base her unreasonableness claim upon a violation of the Americans With Disabilities Act Accessibility Guidelines.

Second, Schollenberger has failed to produce any evidence to demonstrate that the ramp violates any provision of the Michigan Construction Code. Indeed, the only evidence submitted by either party on the issue are the copies of the building permit and the Certificate of Occupancy granted to Sears by the Sterling Heights building authorities. Because a building permit may only be granted if the City determines that the proposed design and construction plans conform to the State Construction Code Act of 1972, the Construction Code, and "the require-

ments of other applicable laws and ordinances," and because a Certificate of Occupancy may be issued only "when the work covered by a building permit has been completed in accordance with the permit, the code and other applicable laws and ordinances," these records strongly suggest that the ramp was built in compliance with the applicable state and local laws. *See* M.C.L.A. §§ 125.1511, 125.1513. Schollenberger has submitted no evidence or authority to the contrary. In light of such evidence, this court simply cannot conclude that the ramp was designed or constructed in violation of the Michigan Construction Code. Accordingly, Schollenberger may not base her unreasonableness claims upon a violation of a state or local construction statute, ordinance or regulation. Summary judgment is appropriate, therefore, as there is no genuine dispute of material fact concerning the reasonableness of the open and obvious risk created by the ramp.

### *ORDER*

Therefore, it is hereby **ORDERED** that the defendant's motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's complaint is **DISMISSED** in its entirety with prejudice.

**SO ORDERED.**